## Commonwealth *v.* Sites, Appellant.

Argued September 26, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*H. Rank Bickel, Jr.,* with him *Edward H. Miller,* for appellant.

*R. Hart Beaver,* Assistant District Attorney, with him *Alvin B. Lewis, Jr.,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Eagen, November 14, 1967:

The appellant, Dennis Terry Sites, was convicted by a jury in Lebanon County of murder in the first degree, and the punishment was fixed at life imprisonment. Following dismissal of a motion for a new trial and imposition of sentence in accordance with the jury's verdict, an appeal was filed with this Court. We reverse the judgment and order a new trial.

Carrie Batdorf Layser was found slain in her home in Richland, Lebanon County, on the early morning of December 24, 1965. An autopsy indicated that death occurred between the hours of 10 p.m., December 23rd, and 5 a.m., December 24th. Police investigating officers learned that a 1958 Chevrolet sedan, fitting the description of one owned by Sites or his wife, was seen in the driveway of the Layser home during the early morning hours of December 24th.

On December 25th, two investigating officers, seeking to ascertain if Sites owned such an automobile, questioned him at his apartment. No warnings concerning his constitutional rights were given Sites at this time, but nothing of an incriminating nature was then disclosed by him.

On December 26th, the district attorney of Lebanon County, after reviewing the evidence then at hand with officers investigating the case, decided that Sites should be questioned further in connection with the crime. Two officers were dispatched to locate him for this purpose. He was found at his father-in-law's home, was requested to return with the officers to his own apartment for the purpose of discussing the case, and he agreed.

Before any questioning began at his apartment, Sites was warned by the officers that he had the right to remain silent. He was further advised that anything he did say would be used against him in court

and also that "he had the right to be represented by counsel."[1]

In answer to questions concerning his whereabouts on the night of December 23rd and the morning of December 24th, Sites initially made misleading statements. As the questioning continued, however, he admitted waking up in his automobile in the driveway of the Layser property on the morning of December 24th with his right hand covered with blood. As a result, he was immediately placed under arrest.

Sites was then taken to the Layser home. There he made an oral statement in the presence of the district attorney and other officers which was tape recorded. Before this statement was given, the district attorney again warned Sites of his right to remain silent and also advised him that he had "the right to be represented by counsel, he could hire counsel of his own choice; if he didn't have the money to hire counsel, that counsel would probably be appointed by the court."

After this statement was concluded, Sites was taken to a hospital to see his wife. After this he was removed to the local state police headquarters for fingerprinting and photographing, following which he was returned to the Layser home. An attempt then followed to refresh Sites' memory and to reconstruct the circumstances incident to the victim's death. In the course of this, Sites made additional damaging admissions. As a result, a second oral statement was taken which also was tape recorded.

On February 21, 1966, Sites was indicted for murder and on February 24th, his court-appointed counsel

---

[1] While Sites categorically denies that he was advised he had the right to legal counsel at any time during this questioning in his apartment, for the purposes of this appeal we accept as true the Commonwealth's testimony that the warning, as described above, was given.

filed a motion to suppress the evidence of all incriminating statements or admissions Sites had made to the investigating officers. A hearing on the motion was held on April 26th, and the motion was denied on June 2nd.

The trial began before a jury on September 19, 1966, and the verdict was returned on September 27th. At trial, evidence of the incriminating admissions made by Sites to the police officers in his apartment before his arrest on December 26th was admitted over objection. Likewise, over objection, evidence of the subsequent re-enactment of the crime at the Layser home and the tape recordings of Sites' statements was introduced for the jury's consideration.

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), for a statement obtained from an individual subjected to in-custody police questioning to be admissible as trial evidence, it is an absolute requirement that the Commonwealth demonstrate, inter alia, that before the questioning began the suspect was clearly informed of his right to have his own legal counsel present during the questioning. And in order to apprise the suspect fully of his rights in this regard, it is indispensable not only that he be warned of his right to have counsel but also that he be advised that a lawyer will be appointed to represent him if he is indigent. As stated in *Miranda*, supra at 473, "Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the

indigent of this right can there be assurance that he was truly in a position to exercise it." (Footnotes omitted.)

It is clear, in fact it is undisputed, that at the time Sites was questioned in his apartment by the police on December 26th, when the first incriminating admissions were made, he was not fully apprised of his right to counsel as dictated by *Miranda*. In our view, this itself proscribed evidentiary use of these admissions. The fact that a sufficient warning of this right was given later at the Layser home did not cure the infection and validate the evidence involved. See *Miranda v. Arizona*, supra. Since the question was neither briefed nor argued, we do not reach the issue of the sufficiency of the warning given subsequently at the Layser home or the effect of the prior unconstitutionally secured admissions on the admissibility of the tape recorded statements involved. But see, *Commonwealth v. Coyle*, 427 Pa. 72, 76 n.3, 233 A. 2d 542, 544 n.3 (1967).

The trial court, while recognizing that the warning of the right to counsel as required under *Miranda* was not given when Sites was questioned in his apartment, ruled that evidence of his admissions on this occasion was still proper because he was not under custodial interrogation at the time involved and also because he had waived his constitutional rights. We cannot subscribe to these conclusions.

An individual certainly may waive his right to have counsel present during police questioning, but the waiver must be made voluntarily, knowingly and intelligently. *Miranda v. Arizona*, supra. This record does not establish that such a waiver was effected. A knowing and intelligent waiver does not occur unless there is full knowledge of the rights one is forfeiting. Cf. *Johnson v. Zerbst*, 304 U.S. 458 (1938), and *Commonwealth ex rel. O'Lock v. Rundle*, 415 Pa. 515, 204 A. 2d 439 (1964). The statement by Sites that he

was aware of his constitutional rights because he watched some police and crime shows on television is inadequate to warrant the conclusion that such knowledge existed.

Whether or not Sites was subjected to custodial interrogation at the time, as contemplated by *Miranda,* poses a more difficult problem. Nevertheless, it is our conclusion that the questioning involved constituted custodial interrogation and called for the warnings *Miranda* mandates.

In *Miranda,* supra at 444, the Court states: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Footnote omitted.) In *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A. 2d 765 (1967), we pointed out that custodial interrogation of a suspect by the police is not limited to questioning in a police station or to questioning that occurs after a formal arrest. If this were not so, the police would need only to delay formal arrest or physical transfer of an accused to the station house in order to circumvent the constitutional safeguards *Miranda* dictates.

In this case, Sites was escorted from his father-in-law's home, where several people were present, to his own home where he could be questioned privately. True, he raised no vocal objection to this, but it would be quite unrealistic to believe that his actions were completely free of compulsion. At the time, he was strongly suspected of participation in the crime. The investigating officers knew that an automobile of the same color, make and model as one owned by Sites or his wife had been parked on the Layser property during the period when the crime was judged to have occurred. They also knew as a result of their investigation that Sites had not been home during the night of

December 23rd or the early morning of December 24th. They also had observed that his right hand was lacerated and swollen. His admissions were in no sense spontaneous or volunteered. His initial statements disclaiming any knowledge of the crime and denying his presence on the Layser property at the time involved were unaccepted and discounted, and it was only after the questioning persisted that the first incriminating admission was made. As one of the officers candidly admitted in his testimony during the suppression hearing, he was "engaged [at the time] in a police custodial investigation designed to elicit a confession about this crime." Such a situation possesses all the requisites of a custodial interrogation.[2]

The decision in *Miranda* was announced on June 13, 1966, and in *Johnson v. New Jersey*, 384 U.S. 719 (1966), was held to apply to all "trials" commencing on and after that date. Despite the fact that the instant trial began on September 19, 1966, the Commonwealth urges that *Miranda* does not control because the "trial" on the issue of the admissibility of the evidence involved began April 26, 1966, the date of the hearing on the motion to suppress. Again, we cannot agree. This would give the word "trial" a new meaning and in our opinion would be contrary to what the United States Supreme Court intended.

Judgment reversed and new trial ordered.

---

[2] In a situation analogous to the one involved, it has been ruled in another jurisdiction that the test of whether or not there is custodial interrogation depends upon the state of mind of the questioning officer. See *People v. Allen*, 50 Misc. 2d 897, 272 N.Y.S. 2d 249 (S. Ct. 1966) ; in another case, it was held that the test is the belief of the person under interrogation. See *People v. Colleran*, 35 U.S. L. Week 2540 (N.Y. S. Ct. 1967). In the present case, it is unnecessary to base our conclusion on any psychological factor. The circumstances herein dictate only one reasonable conclusion.