Dissenting Opinion by
Hoffman, J.:
The majority today finds that the present factual situation differs markedly from that found in Commonwealth v. Jefferson, 423 Pa. 541, 226 A. 2d 765 (1967) and Commonwealth v. Sites, 427 Pa. 486, 235 A. 2d 387 (1967). On that basis, it holds that the colloquy between defendant Barclay and Chief Foltz, without Miranda warnings having been given, was admissible *31 because it was taken during investigative police procedures rather than during custodial interrogation. See Miranda v. Arizona, 384 U.S. 436 (1966). I disagree.
Before noting the similarities between the Jefferson and Sites decisions and the instant case, I feel it imperative to .explicate “custodial interrogation,” which if found, necessitates the giving of the four-fold Miranda warnings.
As stated in the majority opinion and Jefferson, one need not be in the police station or under arrest before he is entitled to be warned of his rights. If one is not questioned in a police station, Miranda warnings are required when the individual is “. . . otherwise deprived of his freedom of action in any significant way.” at 444. This phrase does not mean the person must be formally arrested or that he may not come and go as he wishes.[1] Such an interpretation is highly unrealistic. Most citizens, when detained to answer police questions, are afraid to challenge the authority asserted and are, practically speaking, deprived of their freedom. Moreover, this interpretation is not in conformity with a primary purpose of the Miranda decision, that being, to fully accord a suspect sufficient warnings in order to preserve his constitutional rights. Even though a person may freely leave or ask a policeman to leave his premises, he must still be given warnings if he is a focal point in the investigation.
In my opinion, custody occurs, for the purposes of the Miranda decision, when the police are focusing on *32 a person as a suspect in an alleged crime, see Commonwealth v. Jefferson, supra, or when a person is lead to believe that he is being deprived of his freedom of action or movement under the pressure of the police.[2] A similar approach has been adopted in New York and California. The New York Court of Appeals recently stated: “The test as to custodial interrogation is ‘whether the subject is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action is restricted by such interrogation.’ ” People v. Rodney P. (Anon.), 286 N.Y.S. 2d 225, 233 N.E. 2d 255 (1967). That Court further stated that this form of test “. . . gives effect to the purpose of the Miranda rules; it is not solely dependent either on the self-serving declarations of the police officers or the defendant nor does it place upon the police the burden of anticipating the frailties or idiosyncrasies of every person whom they question.”
Applying the above rule and Jefferson and Sites to the instant case, it is my opinion that the answers elicited from Barclay were clearly inadmissible because they were taken without Miranda warnings in a custodial period. In both Sites and Jefferson, the inadmissible colloquy occurred outside of a police station; in Sites the defendant answered questions in his own apartment. In the instant case, the questioning occurred in the living room of defendant’s home. In Sites and Jefferson, the investigating officers knew a crime had been committed, and that the person being questioned was highly suspect. The case at bar pre *33 sents an apt example of this point. Barclay lived in a small town where there could not have been many cars fitting the description given by the eyewitness to the race. Chief Foltz testified that it only took him one-half of an hour from the time the complaint was registered to pick out Barclay’s car. He knew that Barclay was the owner of this particular car. In fact, he proceeded to question Barclay without checking the license plate against digits given him by the eyewitness. Thus, it is evident from the record that Chief Foltz, upon entering Barclay’s house, was reasonably certain that Barclay’s car, and therefore Barclay, was involved in this drag race.
Furthermore, Chief Foltz testified that upon entering Barclay’s house, “I told the defendant that I had a complaint that he was involved in a drag race that afternoon, . . .” [emphasis added]. The Chief was also asked “Did you in your conversation with him accuse him of racing out on the highway?” The reply was “Yes, I did.”
The above facts, in my view, certainly illustrate that the custodial stage as set forth in Miranda, Jefferson and Sites, had been reached. The mere fact that Chief Foltz did not intend to arrest Barclay upon entering the home or that he did not have a warrant for his arrest at that time is of no consequence. Rather, the important circumstances to note are that Foltz had, at the time of the investigation, a fairly clear notion that Barclay had been racing on the highway, and that Barclay knew immediately he was the focal point of the investigation. Thus, the admissions by defendant Barclay to Chief Foltz as to his participation in the drag race were clearly inadmissible because he was at no time given the requisite Miranda warnings.
I would, therefore, reverse defendant Barclay’s conviction and order a new trial.
Spaulding, J., joins in this dissent.

 The majority accepts this approach by adopting the following portion of the lower court’s opinion: “Hfe was free to come or go, to remain with the Chief or order him to leave, or to remain on the sofa where he had been initially, if he wished to do so.” In Sites, the defendant went with the police to his own home and answered questions. The Supreme Court stated: “True, he raised no vocal objection to this, but it would be quite unrealistic to believe that his actions were completely free of compulsion.” at 492.

 This does not mean that police, when investigating the commission of a crime, must give warnings before asking any questions. They must he given only when the “custodial stage” is reached. Although the definitive line between investigatorial and custodial stages is a difficult one to draw, the Miranda decisions mandates its delineation. See Commonwealth v. Sites, supra.