**Commonwealth v. Bloom**

*Francis K. Risko,* Assistant District Attorney, for Commonwealth.

*Carmen P. Belefonte,* for defendant.

LIPPINCOTT, J., July 7, 1970.—Defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor after a trial before a judge without a jury. His motions for a new trial and in arrest of judgment question whether: (1) The suppression hearing judge erred in refusing to suppress certain Commonwealth evidence; (2) the trial judge erred in failing to declare a mistrial; and (3) the Commonwealth's evidence was so conflicting as to create a reasonable doubt, which should be resolved in favor of defendant.

At the suppression hearing held prior to trial, Trooper Nederostek, one of the two arresting officers, testified that they stopped defendant after observing his vehicle zigzagging back and forth on the Route No. 1 By-pass near Media. At their request, defendant got out of his car and produced his operator's license and registration card. He appeared "glossy-eyed," his speech was slurred, and he had a strong smell of alcohol on his breath. At the officers' direction, he performed a "walk-the-line" field test, the results of which indicated poor coordination and a stuporous condition. The trooper thereafter advised defendant of his constitutional rights and formally placed him under arrest.

Defense counsel moved to suppress testimony concerning defendant's physiological responses to the field test administered prior to the time that defendant was advised of his constitutional rights. The motion was denied, although the suppression hearing judge indicated that the issue might well be subse-

quently reviewed because of the novelty of the question, it appearing to be one of first impression in Pennsylvania.

At trial, Trooper Nederostek reiterated his earlier testimony and further gave his opinion that defendant was under the influence of intoxicating liquors and, therefore, unfit to operate a motor vehicle at the time of his arrest. On crossexamination, the officer admitted that he based his opinion of intoxication on defendant's performance during the "walk-the-line" test. He further stated that such test was conducted so that he would "have something to base . . . an arrest on" and that the test was given for the purpose of determining whether or not charges should be brought against defendant.

The other arresting officer, Trooper O'Boyle, testified at trial in a similar vein (he was not called as a witness in the suppression hearing) and also admitted that the purpose of the "walk-the-line" test was to determine whether or not to bring charges against defendant. This trooper's opinion was also that defendant was under the influence and unfit to operate a motor vehicle.

The law is clear in Pennsylvania that an individual charged with driving under the influence of intoxicating liquor is entitled to Miranda warnings before being subjected to custodial interrogation: Commonwealth v. Bonser, 215 Pa. Superior Ct. 452, 258 A. 2d 675 (1969). Custodial interrogation is defined to be "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way": Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In Commonwealth v. Sites, 427 Pa. 486, 235 A. 2d 387 (1967), the court stated:

"In Commonwealth v. Jefferson, 423 Pa. 541, 226 A. 2d 765 (1967), we pointed out that custodial interrogation of a suspect by the police is not limited to questioning in a police station or to questioning that occurs after a formal arrest. If this were not so, the police would need only to delay formal arrest or physical transfer of an accused to the station house in order to circumvent the constitutional safeguards Miranda dictates."

In light of the above, there is no doubt but that defendant was "in custody" when he was pulled over to the side of the road by the police officers and told to produce his license and registration card.

Did the police have to advise defendant of his Miranda rights prior to directing that he perform the "walk-the-line" test? This question is resolved by Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), which also involved a conviction for driving while intoxicated. While the issue there was whether evidence of a blood test was admissible, the court emphasized that withdrawing of blood was to be distinguished from other situations: 384 U. S. 763:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, . . . To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment."

In the instant case, defendant was not advised of his Miranda warnings until after he submitted to the "walk-the-line" test. There is no evidence whatever to suggest that he volunteered to take the test or

otherwise waived his constitutional rights, nor is there any indication that he was given a choice as to whether to take the test. The circumstances and testimony further show that the test was administered for the purpose of determining his guilt or innocence on the basis of his physiological responses, to wit, coordination, gait, mental alertness, etc. Both officers stated that the purpose of the test was to determine whether or not charges should be preferred.

We, therefore, conclude that defendant was effectively denied his constitutional right against self-incrimination when he was directed to submit to the "walk-the-line" test, and any evidence relating to his physiological responses thereto should have been suppressed prior to trial. See, for a similar result, Stewart v. State, Okl. Ct. of Cr. Appeals, 435 P. 2d 191 (1967), wherein moving pictures of a defendant tested for drinking, which included his ability to walk a straight line, were suppressed on the ground that defendant's right against self-incrimination was violated.

The crucial proof in the Commonwealth's case consisted of the opinions of the police officers. It is hornbook law in Pennsylvania that the opinion of a competent lay witness, *properly based,* is sufficient to sustain a conviction for driving under the influence. However, in the instant case, the testimony of the officers themselves indicates that their opinions were substantially determined by and grounded upon defendant's physiological responses during the "walk-the-line" test. One trooper expressly stated that his conclusion was based on defendant's performance during the test and the other admitted that the test was performed in order to determine whether or not to make a formal arrest.

It is, therefore, apparent that such opinions are

indelibly polluted by the evidence we have ruled inadmissible at a second trial. To assume that the officers could render opinions at a later trial without regard to their observations of defendant during the field test, under the circumstances of this case, would be to turn our backs on common sense. We consequently rule that any opinions of the two troopers as to intoxication are likewise inadmissible at any subsequent trial.

In view of our ruling that a new trial must be awarded, we need not pass upon defendant's second contention. We note, however, in passing that, as trier of law and fact, a judge sitting without a jury must hear the nature of evidence sought to be introduced before he can rule whether it is admissible or not. To suggest that once he has determined evidence to be inadmissible, he must immediately declare a mistrial because he could then not decide the case without being influenced by having learned the nature of the inadmissible evidence is absurd and would destroy our alternate system of trial without jury in criminal cases.

Defendant's third contention is equally without merit and appears to be a make-weight. The conflicts in the testimony of the troopers, who were sequestered at trial, were insignificant when read in light of the entire record. Since a motion in arrest of judgment admits all facts which the Commonwealth's evidence tends to prove, even though improperly admitted, the motion cannot prevail at this stage of the proceedings: Commonwealth v. Hazlett, 429 Pa. 476, 240 A. 2d 555 (1968).

We, therefore, enter the following:

## ORDER

Now, July 7, 1970, (1) defendant's motion for a new trial is granted and a new trial awarded; (2) defendant's motion in arrest of judgment is refused.