405 A.2d 910

**COMMONWEALTH of Pennsylvania**

v.

**Walter DOBSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 16, 1978.

Decided Sept. 18, 1979.

300

John Rogers Carroll, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., David R. Strawbridge, Asst. Dist. Atty., Nancy D. Wasser, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

 

## OPINION

LARSEN, Justice.

This is an appeal from judgments of sentence imposed upon Walter Dobson, appellant, for his convictions of murder of the first degree, aggravated assault with intent to kill, aggravated robbery and burglary.* The pertinent facts are as follows.

Appellant and one Charles Peters were detained by police on December 15, 1971, and questioned at police headquarters in regard to their knowledge of a robbery, assault and felony murder. After more than fifteen hours of questioning, each of the men gave a signed inculpatory statement to the police. A warrant was issued for a search of the home of appellant's mother. The probable cause for the search warrant consisted of the two inculpatory statements. The resultant search produced two shotguns which had been used in the commission of the crimes and audio equipment which had been taken during the robbery.

Appellant filed a motion to suppress his statement, alleging it had been the product of an "unnecessary delay" between his arrest and his arraignment, such delay being prohibited by the prevailing Pa.R.Crim.P. 118. While agreeing there was an unnecessary delay, the court denied appellant's suppression motion, finding no reasonable relationship between the evidence (the statement) and the period of delay.[1]

During the course of his own prosecution, codefendant Peters was granted a motion for suppression of his own statement as the product of an "unnecessary delay". The Commonwealth appealed the suppression order unsuccessfully. In *Commonwealth v. Peters,* 453 Pa. 615, 306 A.2d 901 (1973), this Court affirmed the lower court's determination that an unnecessary delay had occurred, requiring the exclusion of Peters' pre-arraignment statement from his trial.

* This case was reassigned to this author on May 23, 1979.

1. Under *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), evidence was excluded under Rule 118 only where that evidence was reasonably related to the period of unnecessary delay.

Appellant was tried and convicted of first degree murder, aggravated assault with intent to kill, aggravated robbery and burglary. Post-trial motions were denied and Dobson appealed to this Court. This Court held that the lower court erred in refusing to suppress appellant's statement and in allowing the statement to be used at trial. Thus, this Court granted a new trial. *Commonwealth v. Dobson,* 465 Pa. 91, 348 A.2d 132 (1975).

On remand, appellant renewed his motion to suppress the statement, and he further moved to suppress the fruits of the search of his mother's home, i. e. the physical evidence which had been seized there. There had been no such motion to suppress this physical evidence at the original suppression hearing.[2] The suppression court, in accordance with this Court's holding, *Commonwealth v. Dobson, supra,* granted suppression of appellant's statement. However, it refused to suppress the physical evidence obtained pursuant to the aforementioned search warrant. Appellant argued that the warrant was illegal because probable cause for its issuance was based on the suppressed statements of himself and of co-defendant Peters.

At the second trial, the physical evidence obtained through the search executed at appellant's mother's home was admitted into evidence. Appellant was again convicted of murder of the first degree, aggravated assault with intent to kill, aggravated robbery and burglary. Post-ver-

2. The motion to suppress which was filed prior to the first trial was titled "Application to Suppress *Confession on Grounds of Unnecessary Delay* Before Preliminary Arraignment." (Emphasis added.) The application then set forth four paragraphs, each dealing with appellant's statements and with the period of delay. No mention was made of the search, the search warrant, or the evidence seized pursuant thereto, although a reference to other evidence is made in the prayer of relief wherein appellant requested "that said statements and all evidence derived from the use thereof be suppressed." At the suppression hearing on September 14, 1972, the only issue raised was the validity of appellant's confession and the only grounds asserted was that of unnecessary pre-arraignment delay. As will be discussed in text, *infra,* this fleeting reference to the "evidence derived" from appellant's statement fails to state with specificity and particularity, as required by Pa.R.Crim.P. 323(d), either the evidence sought to be suppressed or the grounds for suppression.

dict motions were denied and the present appeal was taken to this Court.[3]

■ Appellant argues that the search of his mother's house was invalid because probable cause for the warrant could not be based solely on the illegally obtained statement of his codefendant,[4] and that, therefore, the physical evidence obtained should have been excluded as the fruits of that illegality under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and its progeny.

■ The Commonwealth initially responds that appellant has waived the issue of admissibility of the physical evidence produced by the search because no motion was made to suppress that evidence at the original suppression hearing held prior to appellant's *first* trial. We agree. Every accused person is afforded an opportunity to seek suppression of any and all evidence allegedly obtained in violation of his constitutional and other rights in this Commonwealth. Appellant was afforded this opportunity and did not seek to suppress the fruits of the search. No excuse is offered, nor does any exist, for his failure to do so.[5]

The then applicable Rules of Criminal Procedure required, as do the present rules, that a defendant state specifically and with particularity the evidence sought to be suppressed and the grounds, facts and events in support of the motion. Pa.R.Crim.P. 323(d), effective March 18, 1972. Rule 323(b) provided then, as now, that if timely application is not made,

3. Even though appellant does not challenge the sufficiency of the evidence, we have carefully examined the record and have found the evidence sufficient to establish guilt beyond a reasonable doubt.

4. The Commonwealth concedes, and we agree, that the appellant's own illegally obtained statement cannot provide any part of the probable cause necessary to support a valid search warrant. Hence, only the statement of co-defendant Peter's may be considered on the issue of probable cause.

5. Moreover, at no time during the initial criminal proceeding was the issue of the validity of the physical evidence raised. No objections were lodged at trial, nor were post-verdict motions made concerning that evidence. Neither was the issue mentioned on direct appeal from the first trial.

the issue of admissibility of such evidence "shall be deemed to be waived." These rules were not adopted to construct procedural impediments to presentation of the accused's defense but were, rather, promulgated in order to achieve a proper balance between the preservation of constitutional and other rights of the defendant and the orderly and efficient administration of the criminal justice system. These concerns have been paramount in the many decisions of this Court imposing stringent waiver requirements. *See, e. g. Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Baylis,* 477 Pa. 472, 384 A.2d 1185 (1978). As we stated in *Commonwealth v. Mitchell,* 464 Pa. 117, 124, 346 A.2d 48, 52 (1975), "[a]ppellate courts render a disservice to judicial economy and the efficient operation of our court system where they freely accept issues that could have and should have been first presented to the courts below for their consideration."

■ At a minimum, the "specificity" and "particularity" demands of Rule 323(d) required that, in order to have preserved the issue of the admissibility of the physical evidence, appellant would have had to have set forth in his motion, and have argued at the hearing, the fact that a seizure of the evidence had occurred pursuant to a search warrant and the grounds now asserted that the seizure was invalid because probable cause for the warrant had been based solely on illegally obtained statements. *See Commonwealth v. Baylis, supra* (post-*McCutchen* case where appellant, who failed to move to suppress on the grounds that he was a minor and was not accompanied by parents or a guardian, was held to have waived this claim even though validity of statement was raised generally); *Commonwealth v. Simmons,* 482 Pa. 496, 394 A.2d 431 (1978) (appellant challenged validity of *Miranda* waiver, but not on specific grounds that he should have been *rewarned* of his *Miranda* rights periodically; this issue held waived).

*Commonwealth v. Harmon,* 469 Pa. 490, 366 A.2d 895 (1976), while factually distinguishable, is legally controlling. That case involved the Municipal Court system of Philadel-

phia County. The Pennsylvania Constitution, Article V, Section 16(r)(iii), after conferring jurisdiction in certain criminal cases to the Municipal Court, provides that a defendant shall "have the right of appeal for trial de novo including the right to trial by jury to the trial division of the court of common pleas." Appellant in that case challenged the constitutionality of a local court rule which provided that pre-trial suppression motions would be heard by a judge sitting as a common pleas judge, but that "the motion may not be reinstated as part of the appeal [to common pleas court]."

There we held that, under the accepted use of the word "trial" as used in this Commonwealth, the right to a de novo trial guaranteed by Article V, § 16(r)(iii), "was not intended to encompass recognized pre-trial proceedings." 469 Pa. at 495, 366 A.2d at 898. *See also Commonwealth v. Sites,* 427 Pa. 486, 235 A.2d 387 (1967). Therefore, we held that a defendant could not relitigate at the trial de novo issues raised, or which could have been raised, at the Municipal Court suppression hearing. Furthermore, *Harmon* noted that our rules of criminal procedure have reinforced the distinction between pre-trial matters and trial matters.

The sound reasoning and result of *Harmon* is equally applicable to the present case. Appellant received a full and fair opportunity to litigate all suppression issues prior to his first trial. No reason exists to justify granting appellant a second opportunity to challenge evidence and to litigate issues which could have and should have been raised at the initial pre-trial suppression hearing.[6]

**6.** The recent case of *Commonwealth v. Hart,* 479 Pa. 84, 387 A.2d 845 (1978) is distinguishable. There we held that the grant of a new trial did not preclude the judge at the second trial from making evidentiary rulings contrary to evidentiary rulings rendered at the first trial. Our primary concern in *Hart* was in allowing the trial court discretion to oversee the trial, which discretion is needed so that the court can fulfill its obligation to assure a just proceeding and to make individual determinations based on the facts of each case as presented to that court. *Hart* dealt with a ruling—not a "non-ruling" because of waiver.

The rules regarding pre-trial suppression hearings are "designed to provide *one single procedure* for the suppression of evidence alleged to have been obtained in violation of the defendant's rights." Comment to Pa.R.Crim.P. 323 (emphasis added). The failure of appellant to adhere to those rules provides a circumstance where invocation of the doctrine of waiver, and Rule 323(d) is both logically required and entirely consistent with the *post-Clair* waiver cases which foster judicial economy and fairness by requiring that claims be raised at the earliest possible stage of criminal proceedings. For the foregoing reasons, any review of appellant's present claims would be inappropriate.

Judgments of sentence affirmed.

ROBERTS, J., filed a concurring opinion in which O'BRIEN, J., joins.

MANDERINO, J., filed a dissenting opinion.

POMEROY, J., did not participate in the consideration or decision of this case.

ROBERTS, Justice, concurring.

I agree with the view of the plurality presented in the Opinion Announcing the Judgment of the Court that judgments of sentence should be affirmed. But I must write separately to express my disagreement with the plurality's reasoning.

I

At his first trial, appellant Walter Dobson moved to suppress a written statement obtained from him by the police. The court of common pleas denied the motion, the

Further, we were concerned in *Hart* that, since the Commonwealth never had an opportunity to contest on appeal the validity of a ruling of the first trial court, "it would be unfair to the Commonwealth to give to the ruling of the first trial court the effect of a final decision with respect to the second trial. *Cf. Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974) (issues waived only if party fail[s] to raise them at first opportunity)." *Commonwealth v. Hart, supra,* 479 Pa. at 88, 387 A.2d at 848.

Commonwealth introduced the statement at trial, and a jury found appellant guilty. On appeal, this Court held that because the statement was obtained in violation of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), it should have been suppressed. The judgments of sentence were reversed and appellant was granted a new trial. *Commonwealth v. Dobson*, 465 Pa. 91, 93, 348 A.2d 132, 133 (1975). On retrial, appellant moved to suppress physical evidence claimed to be a fruit of the impermissible written statement improperly admitted at the previous trial. This motion was denied. The Commonwealth introduced the physical evidence, and a jury found appellant guilty.

On this appeal, a plurality of this Court refuses to consider whether the physical evidence should have been suppressed. Indeed, it would hold that the court of common pleas erred when it provided appellant a new suppression hearing. The plurality does not find any inadequacy in either the timing or the specificity of appellant's motion. Rather, the plurality reasons that where an accused could have moved to suppress evidence before a first trial, but fails to do so, the accused has waived any opportunity to suppress evidence even though a new trial has been granted. Apparently the plurality believes that in 1975 this Court did not grant appellant a new trial, but instead granted appellant only a limited and unique "new proceeding" at which, despite appellant's timely request for relief, the trial court is precluded from considering the admissibility of evidence introduced by the Commonwealth at the previous trial.

The new proceeding which would be created by the plurality's waiver rule is unprecedented in our jurisprudence. Indeed, the Superior Court, on nearly identical facts, has expressly rejected the plurality's unsupported waiver theory. In *Commonwealth v. Throckmorton*, 241 Pa.Super. 62, 359 A.2d 444 (1976), as here, the accused did not move to suppress certain evidence at his first trial, but did make a timely motion to suppress the evidence before retrial. Unlike today's plurality the Superior Court reaffirmed the accused's right to a full and fair trial and refused to hold the motion waived.

It is true that Pa.R.Crim.P. 323(b) provides that appellant's failure to raise the "issue of suppression" in a timely manner before his first trial precludes him from raising the "issue of suppression" at his first trial. ("If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.") But our cases are clear that the binding directive of Rule 323(b) can have no further force once a new trial has been granted. In *Commonwealth v. Hart*, 479 Pa. 84, 387 A.2d 845 (1978), this Court held that a trial court's evidentiary ruling rendered at an accused's first trial is no longer binding on retrial. Just as in *Hart*, the mandate of Rule 323(b) also cannot be binding once a new trial has been granted. A new trial "wipes the slate clean." *Commonwealth v. Oakes*, 481 Pa. 343, 347, 392 A.2d 1324, 1326 (1978).

The plurality claims *Hart* has no bearing here because, unlike the "ruling" in *Hart*, this case presents a " 'non-ruling' because of waiver." This purported distinction carries no force. Both the evidentiary ruling and the so-called "non-ruling" govern the admissibility of evidence at the first trial. Neither can stand if, on retrial, the trial court is "to execute its duty and to conduct a fair trial." *Hart*, 479 Pa. at 87, 387 A.2d at 847.

According to the plurality, "judicial economy" will be promoted by precluding consideration of appellant's motion. The truth of the matter as the Superior Court recognized in *Throckmorton*, is that by granting appellant the opportunity to suppress evidence before retrial, "the goal of judicial economy is actually promoted." 241 Pa.Super. at 68, 359 A.2d at 447. As Judge Hoffman observed,

"[i]f we preclude the defendant this opportunity, his alternative remedies are much more cumbersome and time-consuming. If the defendant is convicted, and if he retains new counsel, he may allege on appeal that trial counsel was ineffective for failing to file timely suppression motions. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). If the record is insufficient for us to decide the merits of the claim, we would remand the case for a

hearing on ineffectiveness under *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). If the trial court decides against the defendant, he would inevitably take a second appeal to this Court. On the other hand, if either this Court or the trial court decides that the ineffectiveness claim is meritorious, the defendant would be entitled to a *second* new trial. It is hard to conceive of a more wasteful expenditure of judicial time."

241 Pa.Super. at 68–69, 359 A.2d at 447–48.

There is no reason to deem appellant's timely motion before retrial waived. The timely motion is in full harmony with first principles of appellate review. It permits both the Commonwealth and the accused to develop a complete record and also affords the trial court full opportunity to correct alleged error before appeal. And the timely pretrial motion filed here in no respect undermines the many other "valid reasons underlying the practice of requiring pretrial motions." W. LaFave, 3 Search and Seizure § 11.1 p. 476 (1978). Jury deliberations and trial strategies are unimpaired. See id. at 476–77.[1]

---

1. Professor LaFave points out:

   "For one thing, . . . the pretrial motion requirement is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt. It avoids interruptions of a trial in progress with auxiliary inquiries which break the continuity of the jury's attention, and likewise avoids the serious personal inconvenience to jurors and witnesses which would result from interruptions at the trial. It also prevents having to declare a mistrial because the jury has been exposed to unconstitutional evidence. Moreover, it is to the advantage of both the prosecution and defense to know in advance of the time set for trial whether certain items will or will not be admitted into evidence. If the pretrial motion is granted, this may result in abandonment of the prosecution, thus avoiding the waste of prosecutorial and judicial resources occasioned by preparation for a trial which otherwise would have to begin only to be terminated at some point thereafter. Also, '[a]n adverse ruling on a pretrial motion will permit the government to change the theory of its case, to develop or place greater reliance upon untainted evidence or otherwise to modify its trial strategy.' If the pretrial motion is denied, then the defendant is in a position at that time to either plead guilty and gain whatever concessions might be obtained by so pleading without causing the commencement of a trial, or to go to trial with a somewhat different defense strategy. Finally, in those jurisdictions where

310

The plurality purports to find support for its conclusion that appellant has waived any attempt to suppress physical evidence in *Commonwealth v. Harmon*, 469 Pa. 490, 366 A.2d 895 (1976). *Harmon*, however, has nothing to do with proper presentation of issues. There, a plurality of this Court held only that an accused's right to a "trial de novo" in the Philadelphia Court of Common Pleas does not encompass a new suppression hearing. In any case, *Harmon* has little bearing here where no question of a right to trial de novo is presented. *Harmon* reflects the view that trial de novo in the court of common pleas avoids "conflict with the constitutional right of trial by jury . . . for those litigants who were not satisfied with the disposition of the Municipal Court." 469 Pa. at 497, 366 A.2d at 898. The trial de novo addressed in *Harmon* is not, as here, a new trial.[2]

As recently as the past year, this Court made it explicit that the Superior Court's holding in *Throckmorton* permitting the accused a new suppression hearing on retrial is

> interlocutory appeal by the prosecution is permitted, the requirement of a pretrial motion to suppress protects that right of immediate appeal, which would be rendered meaningless if a request for suppression could be postponed until mid-trial."
> (Footnotes omitted.)

2. There is broad language in *Harmon* which would suggest that a suppression hearing is not part of a trial and, hence, not part of a new trial. This language, however, is dictum. *Harmon*, as pointed out in the text, concerns only "trial de novo" in the Philadelphia Court of Common Pleas. Any reliance of the plurality on this dictum, therefore, is misplaced. In any event, by so relying on the dictum of *Harmon*, the plurality certainly sweeps beyond the perceived inadequacy in appellant's motion to suppress before his first trial. For even if appellant had moved to suppress the physical evidence he now challenges on retrial, still under the dictum of *Harmon*, as extended to this case, he would be precluded from obtaining a new suppression hearing.

I must also note my continued disagreement with the dictum of *Harmon*. As Mr. Justice Manderino observed, the timing of a ruling on a motion to suppress does not change the fact that the suppression ruling is as much a trial ruling as any other evidentiary ruling. See *Harmon*, 469 Pa. at 499, 366 A.2d at 900 (Manderino, J., dissenting, joined by Roberts, J.). Indeed, as Professor LaFave points out, many jurisdictions still conduct a suppression hearing only at the time the disputed evidence is introduced. See W. LaFave, 3 Search and Seizure, supra at § 11.1 p. 475.

sound and should be followed by the courts of this Commonwealth. In *Commonwealth v. Oakes*, supra, relying upon *Hart*, supra, this Court unanimously held that a post-verdict court reviewing denial of a motion to suppress after a second trial is not bound by rulings of the first post-verdict court. Justice Pomeroy, speaking for the Court, observed that "Oakes . . . became entitled, upon completion of the second trial, to a fresh review of alleged trial error by a court en banc. Pa.R.Crim.P. 1123." 481 Pa. at 348, 392 A.2d at 1327. To hold that the second post-verdict court is not bound by the first post-verdict court's rulings is to affirm the principle that a new trial must include a new suppression hearing. As *Oakes* correctly observed, "post-verdict review should be made in light of the record as it develops at the new trial, which may well be different from the earlier trial. [Citing *Throckmorton*.]" Id. See also *Commonwealth v. Romberger*, 474 Pa. 190, 378 A.2d 283 (1977) (but for earlier opinion of this Court establishing "law of the case" that written statement is inadmissible, admissibility of statement open to litigation "afresh" on retrial without regard to previous trial rulings).

It must be obvious that the plurality's rule of waiver is fundamentally unfair. An accused's decision not to challenge evidence often is based upon the reasonable belief that existing law does not support the claim. Under the plurality's rule of waiver, the same accused on retrial is bound by the previous decision not to challenge evidence, even if governing principles have changed by the time of retrial. The accused thus is denied the application of the law at the time of retrial. Surely this is a heavy penalty to impose upon one who exercises appellate rights and is entitled to a new trial.[3]

---

**3.** Perhaps the plurality seeks to recognize the possibility that a motion to suppress on retrial may be predicated on a change in law when it observes that "[n]o excuse is offered, nor does any exist, for [appellant's] failure to [seek to suppress the physical evidence]." Assuming the plurality has this possibility in mind, still the plurality offers no authority for placing the burden of "excuse" on the accused. Indeed, no authority exists. To the contrary, our Rules of Criminal Procedure expressly place the burden of establishing the

Perhaps the most unfortunate aspect of today's new procedural obstacle to relief is that it will once again force state court litigants to seek vindication of federal rights in the federal courthouse and will require federal courts to grant the relief our courts should have granted. See e. g., *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512 (3d Cir. 1979) cert. granted, —— U.S. ——, 100 S.Ct. 44, 62 L.Ed.2d 30. Even *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), in which the Supreme Court limited the scope of federal court inquiry into state prisoners' fourth amendment claims, requires federal examination of whether the state prisoner was afforded a "full and fair opportunity" to present the fourth amendment claim in state court.[4] The plurality's rule falls well short of satisfying this minimal standard of review.

## II

While this Court should, consistent with *Throckmorton*, hold that appellant is entitled to the suppression hearing the court of common pleas provided him, it should also hold that appellant's motion to suppress was properly denied. Before his second trial, appellant moved to suppress physical evidence seized from the home of his mother. Police seized the evidence pursuant to a search warrant issued on the

legality of evidence on the Commonwealth. See Pa.R.Crim.P. 323(h). There is nothing to indicate this burden in any respect shifts to the accused on retrial.

Even on the plurality's "excuse" standard, it would seem appellant's motion on retrial should be entertained. Appellant's present motion is predicated on a ruling of this Court made after appellant's first trial. Appellant attacks the use of the statement of his co-defendant, Charles Peters, as supporting probable cause to seize the physical evidence. This statement was not ruled inadmissible at his co-defendant's trial until several months after completion of appellant's first trial. See *Commonwealth v. Peters*, 453 Pa. 615, 306 A.2d 901 (1973). At the very least, the plurality should explain why appellant's claim is not "excused."

4. But see *Jackson v. Virginia*, —— U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (refusing to extend *Stone* to state prisoner challenge to sufficiency of evidence); *Rose v. Mitchell*, —— U.S. ——, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) (refusing to extend *Stone* to state prisoner challenge to racial composition of grand jury).

strength of the inculpatory statements of appellant and appellant's co-defendant, Charles Peters. Both statements, however, were obtained in violation of *Futch*. *Commonwealth v. Dobson*, supra (granting appellant a new trial); *Commonwealth v. Peters*, supra (granting co-defendant a new trial). Appellant maintains that because of the *Futch* violations neither his own statement nor that of Peters may be considered in determining whether police had probable cause to search his mother's home. But he makes no claim that the co-defendant's statement was in any respect obtained in violation of appellant's rights, nor that the co-defendant's statement was unreliable. The court of common pleas properly concluded that appellant cannot contest use of co-defendant's statement to provide probable cause for the search warrant. See *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

Accordingly, I would, unlike the plurality, reach the merits rather than impose a waiver. As indicated, I would affirm the judgments of sentence.

O'BRIEN, J., joins this concurring opinion.

MANDERINO, Justice, dissenting.

I dissent. The majority concludes that when a new trial is ordered an accused is not entitled to another suppression opportunity. I cannot agree. As I have previously stated in my dissenting opinion in *Commonwealth v. Harmon*, 469 Pa. 490, 498, 366 A.2d 895, 899, 900 (1976), that conclusion is unwarranted. In *Harmon*, I said:

"The majority concludes that the nature of the 'pretrial' suppression hearing is such that it should not be considered a part of the 'trial,' and that therefore the *de novo* 'trial' should be limited to a re-litigation of guilt or innocence only. The suppression hearing itself, however, is nothing more than a determination of the admissibility of *trial* evidence, and is held outside the presence of the jury pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The purpose for holding a hearing on the admissibility of certain evidence prior to trial rather than during the course of the jury proceedings

is to prevent the uneconomical use of the jury's time, and as a matter of convenience to the court and to the litigants. The hearing, however, need not necessarily be held 'pre-trial.' Cf. *Swenson v. Stidham,* 409 U.S. 224, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972). Questions as to the admissibility of evidence have traditionally been, and remain, an integral part of a trial. The *timing* of admissibility hearings as to certain evidence does not make them any less a part of the trial.

In a different context, the federal courts have been called upon to define the parameters of a 'trial' as that word is used in the Sixth Amendment's guarantee of a 'public trial.' In *United States v. Kobli,* 172 F.2d 919 (3d Cir. 1949) the selection of a jury was held to be part of a public 'trial.' In *United States ex rel. Bennett v. Rundle,* 419 F.2d 599 (3d Cir. 1969), the court recognized that '[a] *Jackson v. Denno* hearing has more of the characteristics of a testimonial hearing, which is the essence of a trial proceeding, than does the selection. of a jury . . . ', and held that for the purposes of the Sixth Amendment's requirement that an accused be afforded a 'public trial,' the 'pretrial' suppression hearing was an integral part of the 'trial' and must be open to the public also. This requirement was recognized by our Court in *Commonwealth v. Bennett,* 445 Pa. 8, 282 A.2d 276 (1971). *See also United States v. Clark,* 475 F.2d 240, 247 (2d Cir. 1973). ('In many criminal prosecutions the disposition of the motion to suppress is as important as the trial itself, since granting of the motion may require entry of a judgment of acquittal for lack of other proof sufficient to convict.')

A 'pretrial' hearing on the admissibility of the evidence which the prosecution seeks to present to the fact finder is as much a part of the 'trial' as a hearing on the admissibility of such evidence would be had it taken place subsequent to the swearing of the jury or to the calling of the first witness." (Emphasis in original.)

Even assuming the *Harmon* view, however, the prosecution's reliance on *Commonwealth v. Harmon,* 469 Pa. 490, 366 A.2d 895 (1976), is misplaced. That case involved the

Municipal Court system of Philadelphia County. After conferring jurisdiction in certain criminal cases to the Municipal Court, Pa.Const. Schedule to the Judiciary Article, art. V, § 16(r)(iii), provided that a defendant shall "have the right of appeal for trial de novo including the right to a trial by jury to the trial division of the court of common pleas." Appellant in *Harmon* challenged the constitutionality of a local court rule which provided that pre-trial suppression motions would be heard by a judge sitting as a common pleas judge, but that "the motion may not be reinstated as part of the appeal [to common pleas court]."

A majority of this Court held that the above right to a de novo trial, "was not intended to encompass recognized pre-trial proceedings." 469 Pa. at 495, 366 A.2d at 898. Therefore, a defendant could not relitigate at the trial de novo issues raised, or which could have been raised, at the Municipal Court suppression hearing.

The purpose of the Municipal Court system was " . . . to relieve the congestion and backlog that was plaguing the existing system within the County. . . . It is obvious that if the Municipal Court proceeding becomes a mere dress rehearsal for further proceedings in the Common Pleas Courts, then the new system has defeated the very purpose for which it was conceived." (Footnotes omitted.) *Id.* at 496–497, 366 A.2d at 898–899. These factors are not present when an appellate court orders a new trial, and *Harmon* is therefore inapplicable here. The guide for the issue before this Court is more appropriately *Commonwealth v. Hart,* 479 Pa. 84, 387 A.2d 845 (1978).

"When a court grants a new trial, the necessary effect thereof is to set aside the prior judgment *and leave the case as though no trial had been held.* . . . By the operation of an order granting a new trial, the cause, in contemplation of law, *is precisely in the same condition as if no previous trial had been held.*

. . . . .

"[U]pon grant of a new trial, *the prior judgment is set aside* and the case, *including all matters raised by the pleadings,* is restored to the status it had before *any* trial

took place as though no trial had been held." (Citations omitted.) (Emphasis added.)

Appellant was granted a new trial by this Court. *Commonwealth v. Dobson*, 465 Pa. 91, 348 A.2d 123 (1975). Therefore, any issue may be raised regardless of whether or not it was raised during the original proceedings, and it cannot be said that appellant has waived any issue simply because it was not raised at the first trial.

As to the merits of appellant's claim, that the search of his mother's house was illegal, the prosecution contends that appellant lacks "standing" to contest the search of his mother's house because he alleged no proprietary interest in the premises.

The United States Supreme Court has recently addressed itself to the analysis to be employed when confronted with an alleged violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the court considered a situation where the appellants challenged the legality of a police search of an automobile in which they were present as passengers, alleging no possessory rights to the vehicle or to the goods seized from it. The Court took the occasion to reaffirm the principle that the

"rights assured by the Fourth Amendment are personal rights [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure."

*Id.* at 138, 99 S.Ct. at 428, 58 L.Ed.2d at 398, quoting from *Simmons v. United States*, 390 U.S. at 389, 88 S.Ct. 967, 19 L.Ed.2d 1247.

The court continued by saying that,

" . . . the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing."

*Id.* at 139, 99 S.Ct. at 428, 58 L.Ed.2d at 398.

I agree that the better analysis would be to focus on the question of whether the challenged search and seizure vio-

lated the Fourth Amendment rights of the person seeking to exclude the evidence obtained as a result of it, rather than upon the question of whether that person has "standing" to challenge the search and seizure. The question of whether the challenged search and seizure has violated the defendant's Fourth Amendment rights,

" . . . in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.".

*Id.* at 140, 99 S.Ct. at 429, 58 L.Ed.2d at 399.

Referring to the language contained in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which said that to assert Fourth Amendment rights, one need show only that he or she was "legitimately on the premises" searched, the *Rakas* court said,

" . . . we believe that the phrase 'legitimately on premises' coined in *Jones* creates too broad a gauge for measurement of Fourth Amendment rights."

*Id.* at 142, 99 S.Ct. at 429, 58 L.Ed.2d at 400.

" . . . *Jones* on its facts merely stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place."

*Id.* at 142, 99 S.Ct. at 430, 58 L.Ed.2d at 400.

Furthermore,

" . . . arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control,"

.     .     .     .     .

" . . . the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."

*Id.* at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401.

The ultimate question, therefore, *is whether the person challenging the search and seizure has a legitimate expecta-*

*tion of privacy in the premises searched,* even though his or her "interest" in those premises might not have been a recognized property interest at common law. *Id.*

The analysis of the *Rakas* court is the same as that made by three members of this Court in *Commonwealth v. Rowe,* 433 Pa. 14, 249 A.2d 911 (1969) (Opinion in Support of Affirmance by Mr. Justice Eagen [now Chief Justice Eagen]). *Rowe* was remarkably similar on its facts to the case before us. The defendant contended that a search of his co-defendant's father's home was based on an invalid search warrant and the prosecution contended that defendant had no standing to challenge the search of that home. At the time of the search the defendant was visiting the searched premises unlike this case but the Opinion in Support of Affirmance recognized

> "[t]hat the protection of the amendment depends not upon a property right in the invaded place or the property seized is also made emphatically clear in *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Rather it depends upon whether or not the area searched 'was one in which there was a reasonable expectation of freedom from governmental intrusion.' [Footnote omitted.] That the [co-defendant's father's] home was such an area to us appears beyond doubt."

433 Pa. at 17–18, 249 A.2d at 912.

With its "new" analysis in mind, the *Rakas* court looked in retrospect to the facts of *Jones v. United States,* and stated,

> "the holding in *Jones* can best be explained by the fact that Jones had a legitimate expectation of privacy in the premises he was using and therefore could claim the protection of the Fourth Amendment with respect to a governmental invasion of those premises, even though his 'interest' in those premises might not have been a recognized property interest at common law."

439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401. *Rakas* did not consider concepts of property law irrelevant but found them not to be controlling. The controlling factor is to be found in whether society considers a particular place as being one where a particular individual has an expectation of privacy.

"Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

439 U.S. at 144, n. 12, 99 S.Ct. at 431, n. 12, 58 L.Ed.2d at 401 n. 12.

The prosecution bears the unshifting burden of establishing that a challenged search and seizure did not violate the defendant's constitutional rights. *Commonwealth v. Silo,* 480 Pa. 15, 389 A.2d 62 (1978); Pa.R.Cr.P. 323(h). If therefore the prosecution asserts as it does here, that a defendant's challenge to a police search of certain premises should be denied because the defendant had no constitutionally protected interest in the premises searched, it must sustain the burden of establishing that defendant possessed no legitimate expectation of privacy in those premises. That burden has not been sustained in this case. The opinion in *Rowe* in considering whether the defendant had an expectation of privacy in the home of the father of his co-defendant concluded "[t]hat the . . . home was such an area to us appears beyond doubt." 433 Pa. at pp. 17–18, 249 A.2d at 912. Likewise, in this matter I have no doubt that a citizen has a legitimate expectation of privacy as to his mother's home. Aside from one's own residence, an expectation of privacy in one's mother's home would certainly "have a source" in the "understandings that are recognized and permitted by society." *Rakas,* 439 U.S. 144, 99 S.Ct. 431, 58 L.Ed.2d 401, n. 12.

Therefore, if the search warrant in this case was insufficient, appellant is correct that the fruits of that search must be suppressed.

There is no dispute that the affidavit upon which the search warrant was obtained in this case does not establish probable cause for the search if the illegally obtained statements of the defendant and his co-defendant are eliminated from the warrant. The prosecution does not object to the elimination of the defendant's statement. It argues, however, that the co-defendant's statement should not be eliminated from the warrant because although illegally obtained, the illegality did not involve a violation of any of the defendant's rights. This novel proposition must be rejected. To accept this argument would permit the police to engage in separate unlawful conduct as to each of two or more citizens and use the fruits, all illegally obtained, to convict all of the citizens. The deterrent purpose of procedural rules, statutory law, or constitutional guides, would be considerably weakened and in some cases totally frustrated. To condone a reciprocal use of illegally obtained statements would be to encourage, rather than to deter, illegal police conduct.

Since the search of appellant's mother's home was based on an invalid search warrant, all of the fruits of that search must be suppressed.

The judgment of sentence should be reversed and a new trial granted.