**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Javier CONDE, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 15, 2002.

Filed April 10, 2003.

---

William T. Cannon, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: JOHNSON, BENDER and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Appellant Javier Conde appeals from the judgment of sentence entered October 29, 2001, in the Court of Common Pleas, Philadelphia County. Upon review, we affirm.

¶ 2 The facts of the underlying case are as follows: at approximately 1:00 a.m. on January 30, 1999, two masked men entered Tony's Bar, located in Philadelphia, and announced a hold up. One of the robbers came behind the bar while the other robber stood by the front door of the bar. Each of the robbers held a gun. The robber behind the bar ordered the barmaid, Sandra Alvarado, to open the cash register. When Ms. Alvarado did not open the cash register, the robber slammed the register against the floor in an effort to open it. *See* Trial Court Opinion, 4/16/02, at 1–2.

¶ 3 As the robbery was occurring, Victor Vega, the owner of the bar, ran from the bar to the second floor of the building. After fleeing upstairs, Mr. Vega looked out a window and saw the robbers leave the bar and run to a house on Cumberland Street located about a block away from the bar. *Id.* at 2.

¶ 4 During the robbery, one of the bar's patrons, Francisco Rivera, was shot in the leg by the robber who had stood by the door. The robbers took about $700.00 from the cash register. *Id.* at 2.

¶ 5 The police were called and arrived at the bar almost immediately after the robbery occurred. Mr. Vega directed the police officers to the house where the robbers had entered. The police found Appellant and his cousin, Keith Conde, at the house, which consisted of a first and second floor apartment. Based upon Keith Conde's physical size and clothing, Mr. Vega identified Keith Conde as the robber who stood near the door. Mr. Vega could not identify Appellant as one of the robbers. As a result, Keith Conde was taken into custody, and Appellant was released. *Id.* at 2.

¶ 6 Mr. Vega knew Appellant and told the police that Appellant was in the bar earlier that evening but had left about thirty minutes before the robbery took place. Prior to leaving the bar, Appellant had asked Mr. Vega to loan him $100.00, but Mr. Vega had refused. *Id.* at 1–2.

¶ 7 Upon arriving at the Cumberland Street residence, Detective Ronald Aitken learned that Appellant had been released. Detective Aitken testified that he ordered uniformed police officers to find Appellant and bring him in for further questioning. *See* N.T. Trial, 6/5/01, at 150, 169–170.

¶ 8 Police officers went to a house on Waterloo Street where they knew Appellant spent time. The police officers saw Appellant inside the house. Upon seeing the police officers, Appellant left the house through the back door. A foot chase entailed, and Appellant was apprehended, arrested and taken to the East Detective Division. *See* Trial Court Opinion, at 3.

¶ 9 A search was conducted of the Cumberland Street apartments. The first floor apartment search yielded a gray semi-automatic pistol loaded with seven rounds, a gray ski cap, a knit type cap and a bullet proof vest. The police also found a gas bill from 1998 sent to Appellant at the Cumberland Street address.[1] *Id.* at 3.

¶ 10 Appellant and Keith Conde were charged with crimes related to the robbery, and a joint jury trial was held.[2] During the jury trial, the Court Crier informed the trial court that spectators in the courtroom were making faces and inappropriate gestures at the witnesses and jurors and writing things down. The spectators were Appellant's fiancee and two or three unnamed friends of Appellant. The

trial court had observed the behavior also and expelled the spectators from the courtroom over Appellant's objection. *See* N.T. Trial, 6/5/01, at 53–57.

¶ 11 The jury convicted Appellant of robbery, possessing instruments of crime (PIC) and criminal conspiracy. *See* N.T. Hearing, 10/19/01, at 14–15. He was sentenced to concurrent prison terms of six and one half to fifteen years for the robbery conviction, two and one half to five years for the PIC conviction and six and one half to fifteen years for the criminal conspiracy conviction.

¶ 12 Appellant filed a timely notice of appeal. The trial court ordered Appellant to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P.1925(b), and Appellant filed a timely statement. The trial court authored a Pa. R.A.P.1925(a) Opinion.

¶ 13 Appellant raises two issues on appeal:

(1) Is the appellant entitled to a new trial as a result of the trial Court's action in upholding the removal of appellant's fiancee and friends from the trial proceedings?

(2) Is the defendant entitled to a new trial as a result of the trial court's denial of the defendant's right to full cross-examination of Police Officer Correa and Court Crier Johnston?

Appellant's brief, at 5.

¶ 14 Regarding Appellant's first issue, the right to a public trial is guaranteed by Article I, Section 9 of the Pennsylvania Constitution and by the Fifth and Sixth Amendments of the United States Constitution. However,

---

**1.** The gun found in the apartment was linked to the shooting at the bar. Nothing found in the search of the second floor apartment connected Appellant to the robbery.

**2.** Keith Conde was tried *in absentia*.

[T]he right to a public trial is not absolute; rather, it must be considered in relationship to other important interests.[6] In considering such other interests, a court must assess all of the circumstances to determine if they present a situation in which an exclusion order is necessary. If the court determines a necessity exists, it may then issue an exclusion order; but the exclusion order must be fashioned to effectuate protection of the important interest without unduly infringing upon the accused's right to a public trial either through its scope or duration.[7] Ultimately, the determination of whether to exclude spectators, as well as the determination of the scope and duration of an exclusion order, must be left to the sound discretion of the trial court because it alone is sufficiently close to the circumstances to apprehend fully the subtleties that may be present.[8] Thus, only if a trial court abused its discretion in issuing an exclusion order or in fashioning the order will reversible error be found on appeal. Therefore, we must determine: (1) whether the court abused its discretion in issuing the exclusion order; and (2) if it did not, whether it abused its discretion in fashioning the scope and duration of the order.

---

[6] Such other interests include the orderly administration of justice, the protection of youthful spectators and the protection of a witness from embarrassment or emotional disturbance.

[7] For example, an exclusion order which is designed to protect youthful spectators from testimony which may corrupt their morals is constitutionally infirm if it excludes the entire public rather than the identifiable class to be protected. On the other hand, an exclusion order which is designed to protect a witness from emotional trauma will not necessarily be constitutionally infirm if it ex-

cludes the entire public for a limited period of time.

[8] For example, the trial court is in a position to assess demeanor which in turn may indicate fear, nervousness, and confusion in a witness, where an appellate court is not.

*Commonwealth v. Knight*, 469 Pa. 57, 65–66, 364 A.2d 902, 906–907 (1976).

█ ¶ 15 Our first inquiry is whether the trial court abused its discretion in excluding Appellant's fiancee and unnamed friends from the trial.

¶ 16 The record reveals that trial counsel raised the issue of the exclusions at an untranscribed sidebar conference on Tuesday, June 5, 2001, prior to the direct examination of Commonwealth witness Officer Joseph Goodwin. *See* N.T. Trial, 6/5/01, at 53. A conference was then held in chambers whereat trial counsel told the trial court that he had just learned that Appellant's fiancee was not permitted to enter the courtroom to observe Appellant's criminal trial. *Id.* at 53. The trial court informed trial counsel that the Court Crier, Mr. Johnston, advised the trial court that a young lady and two or three other spectators who were seated in the rear of the courtroom "were making faces and gestures and one of them was writing." *Id.* at 54. The trial court related:

[W]hen Mr. Johnson [sic] approached them and mentioned to them, they did not respond in an appropriate manner. I, therefore, instructed Mr. Johnston this morning that none of them would be permitted in this courtroom. Upon my instructions, they are being excluded from the courtroom.

*Id.* at 54.

¶ 17 Trial counsel was unsure that Appellant's fiancee had even been in the courtroom on the previous day and wished to question her in this regard. *Id.* at 54. However, the trial court questioned Mr. Johnston instead, who verified that Appellant's fiancee had in fact been present. *Id.*

at 54–55. Trial counsel sought to question Mr. Johnston about "the gestures or whatever it was" that caused him to address the spectators. *Id.* at 55. Mr. Johnston responded that he thought that some of the gestures were intimidating to the "civilian" witnesses on the stand. *Id.* at 55. The trial court found Mr. Johnston's response to be sufficient to satisfy trial counsel's inquiry and added, "*I saw those individuals as well, did not appreciate the manner in which they were looking at the jurors and at the witnesses and I believe they should be excluded from the courtroom.*" *Id.* at 55–56 (emphasis added).

¶ 18 Trial counsel persisted in attempting to discover what the spectators did. *Id.* at 56. The trial court responded, "Excuse me. *I decided based upon what I observed that they should be excluded from the courtroom, and they are excluded.*" *Id.* at 56 (emphasis added). Trial counsel again stated that he was trying to find out what the gestures were. *Id.* at 56. The trial court responded:

> It doesn't matter. I have made that decision. You don't have to find out what the gestures were because it's of not [sic] into [sic] consequence. *I believe the gestures were inappropriate,* the court crier believes they were inappropriate, and they will be excluded from the courtroom. If you have an objection, state if for the record and I'll overrule it.

*Id.* at 56–57 (emphasis added).

¶ 19 Thereafter, trial counsel objected, and the trial court overruled the objection. The trial then proceeded to the exclusion of the spectators. *Id.* at 57.

¶ 20 Based upon our review of the record as set forth above, the trial court excluded the spectators from the courtroom based upon its own observations of the manner in which the spectators looked at the jurors and the witnesses, as well as the spectators' inappropriate gestures.

¶ 21 Although the trial court refused inexplicably to inform trial counsel of the exact facial expressions or gestures made, which would have aided our review of the record on appeal, we find that the trial court's explanation was sufficient to demonstrate that the trial court did not abuse its discretion in excluding the spectators from the courtroom.

¶ 22 Our Supreme Court recognized in *Commonwealth v. Berrigan,* 509 Pa. 118, 133, 501 A.2d 226, 234 (1985):

> [T]rial judges are vested with broad discretion in setting and enforcing the standards of proper conduct for all those who seek to attend judicial proceedings before them. We should not be hasty to reverse a trial judge's actions in establishing order in his courtroom, unless his actions are not designed to maintain dignity, order, and decorum, and instead deny or abridge unwarrantedly the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.

¶ 23 We find that the trial court's exclusion order was designed to maintain the dignity, order and decorum of the courtroom and Appellant's trial and did not deny or abridge Appellant's right to a public trial. Appellant's trial remained open to those members of the public who acted appropriately, which included other supporters of Appellant.

¶ 24 Our second inquiry is whether the trial court abused its discretion in fashioning the scope and duration of the exclusion order. *See Knight,* 469 Pa. at 65–66, 364 A.2d at 906–907. The scope of the exclusion order encompassed the exclusion of Appellant's fiancee and two or three of Appellant's friends from the trial.

The length of the exclusion order is not specified in the record. However, we assume that the exclusion order remained in effect for the length of Appellant's trial. We find no abuse of the trial court's discretion in excluding Appellant's fiancee and two or three friends for the duration of the trial based upon their earlier inappropriate conduct.

¶ 25 We turn now to Appellant's second issue concerning Appellant's desire to examine more fully Officer Correa and Mr. Johnston. Appellant alleges that the trial court precluded Appellant from conducting a full cross-examination of Officer Correa and Mr. Johnston in several key areas.

¶ 26 "The scope and manner of cross-examination is within the sound discretion of the trial judge whose decision will not be overturned absent an abuse of discretion." *Commonwealth v. Wood,* 432 Pa.Super. 183, 637 A.2d 1335, 1348 (1994). A trial court may limit the scope of cross-examination to prevent repetitive inquiries and cumulative testimony. *See Commonwealth v. Mobley,* 424 Pa.Super. 385, 622 A.2d 972, 976 (1993).

¶ 27 We will address Appellant' contentions regarding Officer Correa first. By way of background, Officer Correa was one of the first police officers to arrive at the bar after the robbery, and he was the officer who apprehended Appellant after Appellant fled the Waterloo Street residence. *See* N.T. Trial, 6/5/01, at 5, 18.

¶ 28 On direct examination, Officer Correa testified that he was driving to East Detective Division when he heard a police radio broadcast that a foot pursuit of a male was in progress. Officer Correa was in the area of the foot pursuit and shortly after hearing the announcement, he saw a male running southbound on Howard Street being chased by a police officer. *Id.* at 14–16. Upon seeing this, Officer

Correa got out of his patrol car and ran up to the male, who stopped. Officer Correa grabbed the male and handcuffed him. *Id.* at 16. Officer Correa testified that he arrested the male, who turned out to be Appellant. *Id.* at 16–18.

¶ 29 On cross-examination, trial counsel asked Officer Correa why he had arrested Appellant. *Id.* at 19. Officer Correa answered that he received information from other police officers after he had stopped Appellant that Appellant was involved in the robbery at the bar. *Id.* at 19. Trial counsel accused Officer Correa of having no lawful reason to arrest Appellant when he stopped him. *Id.* at 19. Officer Correa denied that he arrested Appellant when he first stopped Appellant. Officer Correa testified that he put Appellant in handcuffs initially for his own protection. *Id.* at 20.

¶ 30 Trial counsel asked Officer Correa, "You stop a citizen on the street and you say for your protection you decide to put your handcuffs on them?" *Id.* at 20–21. The Commonwealth objected, stating, "He didn't stop a citizen on the street." *Id.* at 21. The trial court sustained the objection, and when trial counsel indicated that he had not heard the objection, the trial court stated:

> [The Commonwealth] objected, and that's sufficient for the court. I didn't like the question. The question was inappropriate, and I've sustained the objection. The question related to stopping a citizen on the street and putting handcuffs on him. It's clear that the officer was in pursuit and he took the individual into custody.

*Id.* at 21. Trial counsel objected, and the objection was overruled. *Id.* at 21.

¶ 31 Trial counsel again attempted to ask Officer Correa if it was his practice to put handcuffs on citizens. *Id.* at 22. The trial court sustained the Commonwealth's objection to the question. *Id.* at 22.

¶ 32 Trial counsel again asked Officer Correa if he handcuffed Appellant for his own protection, and Officer Correa agreed that he had. *Id.* at 22–23.

¶ 33 Appellant argues on appeal that in sustaining the Commonwealth's objections, the trial court precluded trial counsel from demonstrating that Appellant was unlawfully arrested and taken against his will to the police station. Appellant argues that the trial court's statement, "It's clear that the officer was in pursuit and he took the individual into custody," was inappropriate because the propriety of what the officer had done was not clear. *See* Appellant's brief, at 30.

¶ 34 We disagree. First, in *Commonwealth v. Guillespie*, 745 A.2d 654, 660 (Pa.Super.2000) (citing *Commonwealth v. Carter*, 537 Pa. 233, 247 n. 2, 643 A.2d 61, 67 n. 2 (1994)), we recognized, "Our Supreme Court has declined to hold that every time an individual is placed in handcuffs that such individual has been arrested." Therefore, Officer Correa's testimony that Appellant was not under arrest when he first stopped him and handcuffed him demonstrated that Officer Correa acted lawfully, despite trial counsel's contentions to the contrary.

¶ 35 Second, based upon our review of the record, the trial court's statement, "It's clear that the officer was in pursuit and he took the individual into custody," reiterated Officer Correa's testimony that trial counsel refused to accept.

¶ 36 Third, as recognized by the trial court, the legality of Appellant's arrest was an issue to be raised in pretrial motion proceedings, not at trial. *Cf.* Pa.R.Crim.P. 578 and *Commonwealth v. Dobson*, 486 Pa. 299, 309 n. 1, 405 A.2d 910, 916 n. 1 (1979) (Roberts, J., concurring) (quoting W. La-Fave, 3 *Search and Seizure* § 11.1 p. 476 (1978)) ("For one thing, ... the pretrial motion requirement is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt.")

¶ 37 For these reasons, we find no abuse of discretion with the trial court's rulings upon the Commonwealth's objections.

¶ 38 Appellant next contests a ruling sustaining another Commonwealth objection during further questioning of Officer Correa. Specifically, trial counsel asked Officer Correa if he was present at the Cumberland Street address when Mr. Vega failed to identify Appellant as one of the robbers. *See* N.T. Trial, 6/5/01, at 22–23. Officer Correa agreed that he was present when Mr. Vega and Appellant were at the Cumberland Street residence but that he did not hear Mr. Vega state that Appellant was not involved in the robbery. *Id.* at 22–23. Trial counsel asked Officer Correa if there was some reason that he did not hear Mr. Vega fail to identify Appellant, and the Commonwealth objected. The trial court sustained the Commonwealth's objection to the question. *Id.* at 23.

¶ 39 Appellant alleges on appeal that establishing that Mr. Vega was unable to identify Appellant as a participant in the robbery was an essential component of the defense strategy. Appellant alleges that he attempted to demonstrate that Officer Correa was deliberately withholding this exculpatory fact from the jury when the trial court prohibited such inquiry. *See* Appellant's brief, at 31.

¶ 40 Appellant admits in his brief that other witnesses testified that Mr. Vega identified Keith Conde as one of the robbers but did not identify Appellant. *See* Appellant's brief, at 30. Therefore, this evidence would have been cumulative. *Cf. Mobley*, 622 A.2d at 976 (trial court entitled to limit scope of cross-examination to prevent cumulative testimony). Addition-

ally, Detective Aitken ordered uniformed officers to find Appellant and bring him in for further questioning. *See* N.T. Trial, 6/5/01, at 169–170. Therefore, why Officer Correa did not hear Mr. Vega fail to identify Appellant was irrelevant in light of Detective Aitken's directive. *See* Trial Court Opinion, at 3, 7. *See also* Pa.R.E. 402 ("Evidence that is not relevant is not admissible.")

¶ 41 Appellant next contests the trial court's interruption during trial counsel's questioning of Officer Correa about clothing allegedly worn by Appellant during the robbery. Officer Correa testified that the barmaid told him that the robber who went behind the bar wore overalls, similar to those worn by the image of the stereotypical farmer. The Commonwealth's theory of the case was that Appellant was the robber who went behind the bar. Appellant argues on appeal that it was critical that the jury accept the fact that the barmaid, who was allegedly closest to Appellant during the robbery, described Appellant wearing overalls and that Appellant was never seen in overalls after the robbery. *See* Appellant's brief, at 33.

¶ 42 Appellant's contention is meritless. The trial court interrupted Officer Correa's testimony about the description of the clothing given by the barmaid because it was clear that the barmaid believed that the robber behind the bar had on overalls and what the overalls looked like. *See* N.T. Trial, 6/5/01, 32–34. Officer Correa testified and agreed earlier on cross-examination that the barmaid described the robber behind the bar as wearing a jumpsuit or overalls, with straps that come over the shoulders. *Id.* at 32–33. Therefore, there was no reason to belabor the description of the outfit worn by the robber behind the bar. *Cf. Mobley,* 622 A.2d at 976 (trial

court entitled to limit scope of cross-examination to prevent repetitive inquiries).

¶ 43 Lastly, Appellant contests the trial court's refusal to allow trial counsel to question the Court Crier, Mr. Johnston, more fully concerning the gestures and facial expressions Appellant's fiancee and friends had made which caused the trial court to exclude them from the courtroom. Appellant ignores the fact that the trial court excluded the spectators from the courtroom based upon his observations of the spectators. As set forth above, we find that the trial court did not abuse its discretion in ordering the exclusion. We find no merit in Appellant's argument that the trial court should have permitted him to cross-examine Mr. Johnston about his observations.

¶ 44 As we have found no merit in any of Appellant's issues on appeal, the appeal is denied.

¶ 45 Judgment of sentence affirmed.

¶ 46 BENDER, J. files a Concurring Opinion.

BENDER, J., concurring.

¶ 1 Although I agree with the result reached by the majority, I write separately for two reasons. First, I respectfully disagree with the statement on page twelve of the majority's opinion, which reads: "Therefore, Officer Correa's testimony that Appellant was not under arrest when he first stopped him and handcuffed him demonstrated that Officer Correa acted lawfully, despite trial counsel's contentions to the contrary." Merely because a police officer says that an individual was not under arrest does not mean that such individual was not actually under arrest and, certainly, does not mean the officer acted lawfully. An arrest is defined as

[a]ny act that indicates an intention to take the person into custody and sub-

jects him to the actual control and will of the person making the arrest. . . . The test is an objective one, *i.e.,* viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized.

*Commonwealth v. Butler,* 729 A.2d 1134, 1137 (Pa.Super.1999) (citations omitted) (concluding that defendant had a reasonable belief that he was under control and custody of police and was, therefore, under custodial detention when police ordered defendant to come out of house, frisked and handcuffed him, and placed him in police car). *See also Commonwealth v. Martinez,* 437 Pa.Super. 93, 649 A.2d 143, 147 (1994) (indicating defendant under arrest where police handcuffed him and searched his residence; although police indicated they handcuffed him for their own safety, they did not tell the defendant this, and in the absence of this information, defendant could reasonably believe he was under custodial detention); *Commonwealth v. Frank,* 407 Pa.Super. 500, 595 A.2d 1258, 1261 (1991) (concluding arrest occurred when defendant was apprehended and handcuffed by police because defendant reasonably believed that he was not free to leave and because he was physically restrained by use of handcuffs).

¶ 2 In the instant case, chasing down Appellant, handcuffing him, and transporting him to the police station conveyed to Appellant the reasonable belief that he was under arrest. The proper focus of an inquiry into whether an arrest has occurred is not, as the majority contends, the arresting officer's subjective opinion. The facts and circumstances surrounding the seizure of a person must be "viewed in the light of the reasonable impression conveyed to the person subjected to the seizure." *Butler,* 729 A.2d at 1137. Here, Appellant's impression that he was being placed in the custody and control of police after being chased down and handcuffed is a reasonable impression that he was indeed under arrest.

¶ 3 In any event, I agree with the majority that the trial court did not improperly curtail Officer Correa's testimony regarding the lawfulness of Appellant's arrest. However, I would only further note in this regard that the legality of his arrest was not a relevant issue at trial. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Appellant fails to explain the relevancy of the testimony defense counsel sought to elicit from Officer Correa regarding the lawfulness of Appellant's arrest. Appellant merely complains that "Officer Correa was attempting to convince the jury that he had acted lawfully when in fact he had not" and that the trial court precluded defense counsel from establishing that Appellant had been illegally arrested and brought to the police station against his will. Appellant's brief at 29–30. However, Appellant fails to explain how this fact, if established, was relevant at trial.

¶ 4 Moreover, as the majority recognizes, the legality of Appellant's arrest is presented appropriately prior to trial. *See* Majority Opinion at 52 (citing Pa.R.Crim.P. 578 and *Commonwealth v. Dobson,* 486 Pa. 299, 405 A.2d 910, 916 n. 1 (1979)). For example, the issue of the legality of an arrest commonly arises where a defendant seeks to suppress inculpatory evidence obtained following a purportedly illegal arrest. *See, e.g., Martinez,* 649 A.2d at 144 (appeal from judgment of sentence presenting challenge to denial of motion to suppress). *See also* Pa.

R.Crim.P. 578 (indicating request for suppression of evidence is appropriate for omnibus pre-trial motion). Herein, Appellant does not present any such challenge; thus, the relevancy of Officer Correa's testimony at trial regarding the legality of Appellant's arrest is, at best, unclear. I agree with the majority that the trial court did not abuse its discretion by sustaining the Commonwealth's objection to this line of questioning.

¶ 5 Second, Appellant also complained that the trial court improperly curtailed defense counsel's cross-examination of Officer Correa when defense counsel asked Officer Correa about whether he heard Victor Vega indicate that he was unable to identify Appellant as one of the robbers. Appellant's brief at 30. Appellant reproduces the following testimony in his brief:

[DEFENSE COUNSEL]: Had you seen my client back at the location where you took Sandra Alvarado [the bartender]?

[OFFICER CORREA]: Yes.

[DEFENSE COUNSEL]: You saw him at the location where Victor Vega was with the other officers; is that right?

[OFFICER CORREA]: That's correct.

[DEFENSE COUNSEL]: And you were present, were you not, when Victor Vega told the police that my client was not involved in the robbery? You were present for that, weren't you?

[OFFICER CORREA]: I didn't hear that part, no.

[DEFENSE COUNSEL]: Oh, you didn't hear that part?

[OFFICER CORREA]: No.

[DEFENSE COUNSEL]: Why? Is there some reason why you didn't hear that?

[OFFICER CORREA]: I was—

[PROSECUTOR]: Objection.

[TRIAL COURT]: Objection sustained. You don't have to answer that.

N.T. Trial, 6/5/01, at 22–23. Appellant argues that, through this line of questioning, he sought to demonstrate that Officer Correa "was deliberately withholding this exculpatory fact [*i.e.,* Mr. Vega's failure to identify Appellant as one of the perpetrators] from the jury." Appellant's brief at 31.

¶ 6 I agree with the majority that this testimony was cumulative in that other witnesses testified that the bar owner, Victor Vega, could not identify Appellant as one of the robbers. *See* Majority Opinion at 52 (citing *Commonwealth v. Mobley,* 424 Pa.Super. 385, 622 A.2d 972, 976 (1993)). *See also* N.T. Trial, 6/5/01, at 70–71 (another officer's testimony that no one, including Mr. Vega, could identify Appellant as one of the robbers and, therefore, Appellant was initially released). However, I do not agree with the majority's statement on page thirteen of its opinion which reads: "Additionally, Detective Aitken ordered uniformed officers to find Appellant and bring him in for further questioning.... Therefore, why Officer Correa did not hear Mr. Vega fail to identify Appellant was irrelevant in light of Detective Aitken's directive." Majority Opinion at 53. In my opinion, this statement is problematic insofar as it infers that Officer Correa could act lawfully by arresting Appellant merely on Detective Aitken's directive. However, the officer who issues an order or bulletin directing other officers to apprehend a suspect must have articulable facts to support a reasonable suspicion that the wanted person has committed an offense. *Commonwealth v. Queen,* 536 Pa. 315, 639 A.2d 443, 445 (1994) (requiring officer who submitted police bulletin to testify at trial in order to assess probable cause for arrest made through another officer who acted on the bulletin). In summary, although I

disagree with the majority's statement as indicated above, I agree with the majority's conclusion that the testimony of Officer Correa on this issue was cumulative and, therefore, the trial court did not abuse its discretion by sustaining the prosecutor's objection.

¶ 7 In all other respects, I agree with the analysis presented by the majority opinion.