J-S37012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            :             PENNSYLVANIA
                                            :
             v.                                :
                                            :
                                            :
TYREESE COPPER                     :
                                            :
             Appellant               :    No. 1926 EDA 2017

Appeal from the PCRA Order May 25, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007129-2009

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                 **FILED SEPTEMBER 06, 2018**

Appellant, Tyreese Copper, appeals from the order entered on May 25, 2017, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The trial court summarized the facts of this case as follows:

> On February 18, 2009, at approximately 8:00 p.m., Reginald James and Davina Sparks left Mr. James's home at 5611 Stokes Street to pick up snacks for Mr. James's younger siblings at the corner grocery store. After buying the snacks, Mr. James and Ms. Sparks headed back to Mr. James's house. As the two sat in Ms. Sparks's car, along with her two-year old daughter, a black male approached the passenger side of the car and tried to open it. Ms. Sparks was concerned because she did not know him, but Mr. James said that he knew him, and got out of the car. As Mr. James got out of the car and began to walk towards the man, another black male appeared from behind a van, and Mr. James turned around and began to run away from both men. He was in front of Ms. Sparks's car when he was shot multiple times.
>
> Ms. Sparks drove herself and her daughter away from the scene, before encountering police a few blocks away. She immediately

_____

* Former Justice specially assigned to the Superior Court.

jumped out of her car and alerted Philadelphia Police Officer Robert Nesmith that her boyfriend had just been shot by two black males on Stokes Street. Officer Nesmith put out a radio call that a shooting had taken place, to which Officer Christopher Mulderrig and his partner responded. When they arrived at 5611 Stokes Street, Officer Mulderrig and his partner loaded Mr. James into the back of their police car. They then drove Mr. James to Einstein Hospital, where he was pronounced dead. He had been shot a total of nine times, sustaining gunshot wounds to his chest, back, stomach, thigh, arm, and hand.

Officer Nesmith and his partner drove Ms. Sparks around the area in an attempt to locate the shooters. Ms. Sparks identified one man on the street as being the person who had attempted to open her car door. This man, George Spain, was taken into custody and gave a statement to police that night.

On February 19, 2009, based on Mr. Spain's statement, detectives brought a juvenile, [S.K.], into the police station to be interviewed. [S.K.] told police that in mid-February, four or five nights before Mr. James's murder, [S.K.] had stolen a safe out of [Appellant's] basement. He told police that he and his Uncle Tony then brought the safe to Mr. James's basement because they knew he would have the tools to get it open. [S.K.], Mr. James, and "Uncle Tony" got the safe open and split the money they found inside, which was approximately fifteen hundred dollars. [S.K.] told police that word quickly spread around the neighborhood that he had stolen [Appellant's] safe.

On February 19, 2009, police showed Ms. Sparks a photo array that contained [Appellant's] photograph. She identified [Appellant] as the man who'd appeared from behind the van and shot Mr. James. A warrant was issued for [Appellant's] arrest, and he was ultimately arrested on April 21, 2009.

Trial Court Opinion, 2/23/2012, at 2–4 (record citations and footnotes omitted).

On September 22, 2011, a jury convicted Appellant of first-degree murder and the trial court sentenced Appellant to life imprisonment. This Court affirmed Appellant's judgment of sentence on July 12, 2013. **_See_**

*Commonwealth v. Copper*, 2013 WL 11261346 (Pa. Super. 2013) (unpublished memorandum). Our Supreme Court denied further review on April 30, 2014. *See Commonwealth v. Copper*, 82 A.3d 1063 (Pa. 2014).

On March 13, 2015, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel to represent Appellant on October 8, 2015. At Appellant's request, on January 28, 2016, the PCRA court allowed Appellant to proceed *pro se* after conducting a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998) ("When the waiver of the right to counsel is sought during PCRA review, an on-the-record determination should be made that the waiver is knowing, intelligent, and voluntary."). Thereafter, Appellant filed *pro se* amended PCRA petitions on May 31, 2016 and August 8, 2016. On March 10, 2017, the PCRA court issued notice of its intent to dismiss the PCRA petition pursuant to Pa.R.Crim.P. 907. On March 31, 2017, Appellant filed a *pro se* response to the PCRA court's Rule 907 notice. The PCRA court denied Appellant PCRA relief by order entered on May 25, 2017. This timely appeal resulted.[1]

Appellant claims the PCRA court erred or abused its discretion in dismissing his PCRA petition without an evidentiary hearing, claiming trial counsel was ineffective by:

---

[1] Appellant filed a *pro se* notice of appeal on June 3, 2017. On June 8, 2018, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on June 13, 2017. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 12, 2017.

1) Failing to raise a Confrontation Clause objection to the testimony of medical examiner Dr. Edward Lieberman;

2) Failing to object to the [trial c]ourt's clearing of the courtroom during the testimony of Davina Sparks;

3) Failing to hire an expert in identification;

4) Failing to investigate facts favorable to [Appellant] and failing to investigate witness Davina Sparks;

5) Failing to object when the Commonwealth stated during closing arguments that Gregory Anderson was the second shooter and vouched for witness Davina Sparks;

6) Failing to object to the Commonwealth's closing arguments;

7) Failing to investigate the motive of Gregory Anderson for identifying [Appellant] as the shooter;

8) Failing to impeach the Commonwealth's ballistics expert and hire a ballistics expert on behalf of [Appellant];

9) Failing to make a more specific objection to the [trial c]ourt's instruction on conspiratorial and accomplice liability;

PCRA Court Opinion, 9/12/2017, at 2.[2]  Finally, Appellant claims that the PCRA court abused its discretion by declining to hold an evidentiary hearing. Appellant's Brief at 37-38.

"We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Johnson**, 179 A.3d 1153, 1156 (Pa. Super. 2018).  Our standard of review when considering a claim of counsel ineffectiveness is as follows:

---

[2]  We have reordered the issues for ease of discussion.  The issues we address are taken from the PCRA court opinion as Appellant did not set forth the precise issues raised in his brief.

- 4 -

> The law presumes counsel has rendered effective assistance. The burden of demonstrating ineffectiveness rests on Appellant. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

*Id.* at 1158 (internal citations and quotations omitted).

First, we address Appellant's contention that trial counsel was ineffective for failing to object to the testimony of Dr. Edwin Lieberman regarding the manner and cause of the victim's death. Appellant's Brief at 9-11. Appellant contends that such failure was in violation of the Confrontation Clause because Dr. Lieberman did not personally conduct the autopsy and, instead, relied on the findings of Dr. Bennett G. Preston. *Id.*

Here, the PCRA court determined that after Dr. Preston retired, Dr. Lieberman independently reviewed the autopsy photos and various medical reports in formulating his own opinion regarding the victim's death. PCRA Court Opinion, 9/12/2017, at 6. Thus, the PCRA court found "there were no grounds upon which defense counsel could have properly objected to Dr. Lieberman's testimony." *Id.*

Our Supreme Court recently decided *Commonwealth v. Brown*, 185 A.3d 316 (Pa. 2018). Therein, the Commonwealth admitted an autopsy report into evidence authored by a medical examiner who was no longer employed by the Medical Examiner's Office and was not called at trial. *Brown*, 185 A.3d

at 318. Instead, the Commonwealth called another medical examiner from "the Philadelphia Medical Examiner's Office, who had not been present at the autopsy, to provide expert testimony based on portions of the autopsy report as well as autopsy photographs." *Id.* at 318–319. The ***Brown*** Court determined that an autopsy report is "testimonial in nature, and its admission into evidence without [the testimony of the doctor who performed the autopsy], and in the absence of any prior opportunity to cross-examine [that doctor], violate[s a defendant's] constitutional right to confront the witnesses against him." *Id.* at 333. Our Supreme Court, however, ultimately concluded that the error in admitting the autopsy report was harmless where the testifying, substitute medical examiner "formed an independent conclusion and testified to [his] conclusion based on his own review of both the otherwise inadmissible facts and data contained in the report and the data provided by the autopsy photographs." *Id.* at 332. Thus, "[b]ecause [the testifying medical examiner] properly formed an independent opinion, and was available to be cross-examined regarding the basis of that opinion, [our Supreme Court] conclude[d] there was no Confrontation Clause violation with respect to his opinion regarding the cause of death." *Id.* The ***Brown*** Court further found that, "[e]ach case involving this particular challenge to the Confrontation Clause must be based on its unique circumstances, as different facts regarding the nature of the opinion offered and the type of data relied upon by the testifying witness could result in a finding of prohibited surrogacy." *Id.* at 333.

In this case, the factual scenario is substantially similar **Brown**. Dr. Preston, the original examiner who performed the autopsy and took forensic photographs, had retired. N.T., 9/20/2011, at 61-62. Dr. Lieberman used the information contained in Dr. Preston's autopsy report and the photographs taken to reach his own conclusions regarding the cause and manner of death. **Id.** at 63-79. Moreover, here, unlike in **Brown**, Dr. Preston's report was not admitted into evidence. Accordingly, Dr. Lieberman's opinion regarding the manner and cause of the victim's death was properly admitted, because it was independent of Dr. Preston's findings and Appellant had the ability to cross-examine Dr. Lieberman regarding his opinion. As such, there is no merit to Appellant's claim of counsel ineffectiveness regarding Dr. Lieberman's testimony.

We turn now to issues two through six as set forth above, which relate to trial counsel's effectiveness with regard to eyewitness, Davina Sparks. First, Appellant claims trial counsel was ineffective for failing to object when the trial court cleared the courtroom during Ms. Sparks testimony which he avers was in violation of his right to a public trial. Appellant's Brief at 12-15.

We have previously determined:

[T]he right to a public trial is not absolute; rather, it must be considered in relationship to other important interests. In considering such other interests, a court must assess all of the circumstances to determine if they present a situation in which an exclusion order is necessary. If the court determines a necessity exists, it may then issue an exclusion order; but the exclusion order must be fashioned to effectuate protection of the important interest without unduly infringing upon the accused's right to a

public trial either through its scope or duration. Ultimately, the determination of whether to exclude spectators, as well as the determination of the scope and duration of an exclusion order, must be left to the sound discretion of the trial court because it alone is sufficiently close to the circumstances to apprehend fully the subtleties that may be present. Thus, only if a trial court abused its discretion in issuing an exclusion order or in fashioning the order will reversible error be found on appeal. Therefore, we must determine: (1) whether the court abused its discretion in issuing the exclusion order; and (2) if it did not, whether it abused its discretion in fashioning the scope and duration of the order.

*Commonwealth v. Conde*, 822 A.2d 45, 49 (Pa. Super. 2003) (internal citation and footnotes omitted). We have permitted exclusion orders for "the protection of a witness from embarrassment or emotional disturbance." *Id.* Moreover, "an exclusion order which is designed to protect a witness from emotional trauma will not necessarily be constitutionally infirm if it excludes the entire public for a limited time." *Id.*

Based upon the foregoing, we discern no abuse of discretion in excluding spectators from the courtroom while Ms. Sparks testified. In this case, the PCRA court determined that the jury, in making its credibility determinations, needed to see Ms. Sparks face while she testified. N.T., 11/21/2011, at 59-60. However, because of her Muslim faith, Ms. Sparks wished to keep her face covered. *Id.* at 54-55. As such, in striking a balance between Appellant's right to a public trial and the need to respect the witness' religious beliefs, the trial court cleared the courtroom, but only for the duration of Ms. Sparks' testimony. *Id.* at 62-65. The exclusion was limited in duration to protect the witness from emotional disturbance, as well as to protect Appellant's right to confront her and to allow the jury to make effective credibility determinations.

As such, there is no merit to Appellant's contention that trial counsel was ineffective for failing to object to the trial court's exclusion of spectators.

Next, Appellant argues that Ms. Sparks' identification of Appellant as the shooter was unreliable and that trial counsel was ineffective for failing to seek suppression. *Id.* at 15-23. More specifically, Appellant acknowledges our Supreme Court's decision in **Commonwealth v. Walker**, 92 A.3d 766 (Pa. 2014), which post-dated his trial, but overturned long-standing precedent and currently allows defense counsel to utilize an identification expert. *Id.* at 20. Appellant, however, maintains "that counsel should have retained an expert witness to challenge the reliability and accuracy of Davina Sparks' identification of [] Appellant as the shooter." *Id.* Appellant also maintains that trial counsel was ineffective for failing to object to Ms. Sparks' identification testimony.[3] *Id.* at 15.

At the time of Appellant's trial, however, Pennsylvania law barred the use of expert testimony to aid a jury in understanding eyewitness identifications. Our Supreme Court, however, changed tack in 2014 when it decided "that such expert testimony on the limited issue of eyewitness identification [] may be admissible, at the discretion of the trial court, [] assuming the expert is qualified, the proffered testimony relevant, and will assist the trier of fact." **Commonwealth v. Walker**, 92 A.3d 766, 792 (Pa.

---

[3] Appellant failed to raise this discrete issue in his concise statement of errors complained of on appeal and, thus, has waived this aspect of his current claim. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b)] Statement […] are waived.").

2014). Trial counsel, however, cannot be deemed ineffective for failing to anticipate a change in law in this Commonwealth. *See Commonwealth v. Hannibal*, 156 A.3d 197, 231–232 (Pa. 2016). As such, we agree that no relief is due.

Appellant also contends that trial counsel was ineffective for failing to object to the Commonwealth's closing argument wherein it vouched for Ms. Sparks' character by opining that she "suffered trauma when she saw her boyfriend shot and killed." Appellant's Brief at 24.

When a prosecutor's closing argument constitutes a fair response to a defense argument or is based upon the evidence presented at trial, defense counsel has no obligation to object and a related claim of trial counsel effectiveness has no merit. *See Commonwealth v. Carson*, 913 A.2d 220, 240 (Pa. 2006). Here, the PCRA court recognized:

> It is true that the prosecutor did make remarks about Ms. Sparks being traumatized in an attempt to explain why Ms. Sparks had initially identified someone else as the shooter on the night of the shooting. This argument, however, was entirely proper. The evidence presented at trial showed that [Ms.] Sparks was in a car along with her daughter and the decedent immediately before the shooting. She witnessed the decedent, who was her friend, being shot and killed after getting out of the car and being chased by two men. The decedent was right in front of the car, where [Ms.] Sparks still sat with her daughter, when the killing occurred. These were obviously traumatic events. Accordingly, the prosecutor's arguments regarding [Ms.] Sparks were [] well supported by the evidence. As such, trial counsel had no basis upon which to object.

PCRA Court Opinion, 9/12/2017, at 10. Upon review, we agree. There is no dispute that Ms. Sparks personally witnessed the shooting from close range

and the facts support the Commonwealth's suggestion that she was traumatized as a result.

Moreover, the failure to object to closing arguments does not prejudice a defendant or amount to counsel ineffectiveness where the trial court properly instructs a jury that closing arguments are not evidence, that the jury is the sole judge of facts to be determined by the evidence, and that the Commonwealth has the burden of proving its case beyond a reasonable doubt. *See Commonwealth v. Jones*, 811 A.2d 1057, 1063 (Pa. Super. 2002). Here, the trial court gave the jury all of those instructions. *See* N.T., 11/22/2011, at 67-68 and 71. "[J]urors are presumed to follow the court's instructions." *Commonwealth v. Aikens*, 168 A.3d 137, 143 (Pa. 2017) For this additional reason, Appellant's claim that counsel was ineffective for failing to object to the Commonwealth's closing argument fails.

Finally, with regard to Ms. Sparks, Appellant maintains trial counsel was ineffective for failing to investigate additional facts about her. *Id.* at 35-37. He claims that Ms. Sparks asked that her husband be permitted to remain in the courtroom for her testimony, but "Ms. Sparks is not legally married and she has no marriage license." *Id.* at 35. Appellant asserts that if trial counsel had properly investigated, he "could have impeached her before the jury and the trial court." *Id.* Appellant further claims that trial counsel "failed to investigate the male that was identified by Ms. Sparks as the shooter on the night of the shooting" when she subsequently identified Appellant from a police photo array. *Id.* at 36.

On this aspect of Appellant's ineffective assistance of counsel claim, the PCRA court noted:

> [Appellant] failed to proffer any evidence that [Ms.] Sparks was not married to the man who she identified as her husband. Moreover, there is nothing in the record to suggest that the outcome of the trial would have been different if trial counsel had discovered that the man Sparks identified as her husband was not legally married to her.
>
> As to the individual who [Ms.] Sparks misidentified as the shooter, [Appellant] failed to proffer any evidence suggesting that any investigation would have uncovered evidence that could have affected the outcome of the trial. No relief is due.

PCRA Court Opinion, 9/12/2017, at 13.

We agree with the trial court's assessment. Appellant has the burden to plead and prove he is entitled to relief under the PCRA. Moreover, our Supreme Court has stated:

> Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Counsel's strategic choices made after less than a complete investigation are considered reasonable, on a claim of ineffective assistance, precisely to the extent that reasonable professional judgments support limitations on the investigation. Failure to conduct a more intensive investigation, in the absence of any indication that such investigation would develop more than was already known, is simply not ineffectiveness.

***Commonwealth v. Eichinger***, 108 A.3d 821, 847 (Pa. 2014) (internal citations omitted). Appellant has failed to proffer any additional exculpatory evidence that trial counsel should have presented or could have uncovered. Appellant's allegations are purely speculative and the PCRA court properly determined that Appellant failed to show he was prejudiced or that the

- 12 -

outcome of trial would have somehow been different had trial counsel investigated additional facts about Ms. Sparks or the man she identified as the perpetrator immediately after the shooting.

Next, we address three inter-related claims of ineffective assistance of counsel with regard to Appellant's father and Commonwealth witness, Gregory Anderson. Generally, Appellant contends that trial counsel was ineffective for failing to refute the Commonwealth's theory that Anderson was the second shooter. Appellant's Brief at 23.

In his seventh issue presented, Appellant claims that trial counsel was ineffective for failing to investigate Anderson's motive "to give false police statements incriminating [] Appellant in the [] shooting." Appellant's Brief at 29. On this issue, the PCRA court recognized that, at trial, "Anderson recanted the majority of his statement [made to police] and testified that he did not tell police that he witnessed the shooting and did not identify [Appellant] as the shooter." PCRA Court Opinion, 9/12/2017, at 10. Accordingly, the PCRA court determined that "had trial counsel presented evidence of Anderson's motive in identifying [Appellant] as the shooter, it would have undermined Anderson's testimony that he had not identified [Appellant] as the shooter." *Id.* at 11. Upon review, we agree with the PCRA court's assessment. At trial, Anderson completely recanted the statements he made to police. As such, any evidence of Anderson's motive, in giving a statement that he later repudiated, would have been needlessly redundant. Hence, there is no merit to Appellant's claim. Moreover, Appellant fails to show trial counsel's chosen

strategy lacked a reasonable basis or how he was prejudiced. The jury was already confronted with Anderson's inconsistent positions. We reject Appellant's suggestion that trial counsel should have impeached Anderson more so than his own inconsistent positions.

In his eighth issue presented, Appellant contends that trial counsel was ineffective for failing to retain a firearms expert to refute the Commonwealth's "expert [who] stated that two separate guns were used to fire the bullets into the decedent" because .38 caliber and .357 caliber projectiles were recovered from the decedent. Appellant's Brief at 32. On this issue, Appellant claims in sum:

> a .357 caliber handgun can and will fire a .38 caliber bullet as well as a .357 bullet. This is an absolute fact and is documented in the FBI Shooters Bible. Any "real" firearms expert knows this as fact. So the Commonwealth expert was wrong and trial counsel could have impeached him but because [] trial counsel was not knowledgeable in firearms he had no info[rmation] to impeach the Commonwealth witness with.

*Id.* at 32.

Appellant, however, does not support his contention with any proof to support his bald contention and, therefore, has not met his burden under the PCRA. Bald, undeveloped allegations do not satisfy a petitioner's initial burden to plead and prove that he is entitled to PCRA relief. *See* 42 Pa.C.S.A. §9543(a); *Commonwealth v. Cousar*, 154 A.3d 287, 299 (Pa. 2017) ("[I]t is not enough to take a cold record, state alternative choices counsel could have made, and then declare an entitlement to relief[; m]ere conclusory

- 14 -

allegations [in a PCRA petition,] are insufficient to establish entitlement to relief."). Here, Appellant's claim that a .357 caliber firearm will fire two different caliber bullets is wholly unsupported. While Appellant alleges that there is documentary proof in the "FBI Shooters Bible," he has not presented it. Even if true, Appellant fails to explain how the record supports his contention that the same firearm fired two bullets of different calibers in the same shooting incident. At trial, the Commonwealth's firearm expert opined that the physical evidence showed two firearms were used based upon an examination of distinct, microscopic "land and groove" markings on two different bullets that were recovered. N.T., 11/20/2011, at 277-278. The expert testified that he was scientifically certain that at least two different firearms were used in this shooting. *Id.* at 278-279. He unequivocally stated, "[T]here's no way [the different bullets] could have been fired from the same firearm." *Id.* at 278.

To the extent that Appellant claims that a firearm expert could have refuted the Commonwealth's expert, Appellant has not proffered such an expert. "It is axiomatic that when a PCRA petitioner claims counsel was ineffective for failing to call a witness, he or she must establish (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." *Commonwealth v. Goodmond*, 2018 WL 2996061,

at *4 (Pa. Super. 2018). Accordingly, Appellant's bald claim of ineffective assistance of counsel lacks merit.

Next, Appellant claims that trial counsel was ineffective for failing to object to the Commonwealth's closing argument wherein the Commonwealth suggested that Anderson was the second shooter, despite the fact that Anderson was never charged in this case. Appellant's Brief at 23. As previously noted, the trial court instructed the jury that closing arguments were not evidence, that the jury was the sole judge of facts to be determined by the evidence, and that the Commonwealth had the burden of proving its case beyond a reasonable doubt. **See** N.T., 11/22/2011, at 67-68, 71. As such, we presume the jury followed the trial court's instructions and, therefore, we find no merit to Appellant's ineffectiveness claim as presented. **See Commonwealth v. Jones**, 811 A.2d at 1063.

Appellant also claims that, "trial counsel was ineffective for failing to make a more specific objection to the trial court's jury instruction on [the] conspiratorial and accomplice charge." Appellant's Brief at 33 (complete capitalization omitted). Appellant acknowledges that trial counsel objected to the proffered jury instruction, but claims "this jury charge, in which Appellant was made liable as an actor in a conspiracy, and/or as an accomplice in the shooting and killing of the decedent, when Appellant was never charged with either[,] violated due process and prejudiced Appellant by denying him a fair trial." **Id.** at 34. Here, Appellant concedes that trial counsel objected to the jury charge. Upon our review of the record, counsel did object to "the

instructions with regards to liability for conspiratorial conduct." N.T., 11/22/2011, at 20. As a result, PCRA court opined that, "[t]rial counsel cannot be ineffective for failing to make an objection that he did, in fact, make." PCRA Court Opinion, 9/12/2017, at 7. Moreover, the PCRA court determined that there "was nothing in the record to suggest that a 'more specific objection' would have resulted in the [trial c]ourt declining to give the instruction." *Id.*

Upon review, we agree that there is no merit to this claim. Appellant does not suggest how a more strenuous objection would have yielded a different result. Moreover, to the extent that Appellant suggests trial court error in permitting the instruction, this claim was litigated on direct appeal and a prior panel of our Court found it waived for failure to cite to the record or legal authority. *See Commonwealth v. Copper*, 2013 WL 11261346, at *6 (Pa. Super. 2013) (unpublished memorandum). Appellant still fails to cite authority to this Court for his bald proposition. Moreover, Appellant does not argue that direct appeal counsel was ineffective for failing to support his direct appeal with legal and record citations. As such, we agree with the PCRA court that Appellant's claim must fail. For all of the foregoing reasons, we conclude that Appellant was not entitled to relief under the PCRA.

Finally, with regard to Appellant's claim that the PCRA court abused its discretion in dismissing his PCRA petition without an evidentiary hearing, we have previously determined:

> There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing

is not necessary. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

**Commonwealth v. McGarry**, 172 A.3d 60, 70 (Pa. Super. 2017) (internal citations and quotations omitted). Having determined that there was no merit to any of Appellant's contentions, we discern no abuse of discretion by the PCRA court in denying an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/18