J-S40035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| STACEY LANE, | : | |
| | : | |
| Appellant | : | No. 884 EDA 2014 |

Appeal from the Judgment of Sentence March 7, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0006498-2013

BEFORE: BOWES, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED AUGUST 29, 2016**

Stacey Lane ("Lane") appeals from the judgment of sentence imposed following his conviction of driving under the influence ("DUI")—general impairment, and DUI—controlled substance or metabolite.  ***See*** 75 Pa.C.S.A. § 8302(A)(1), (D)(1).  We reverse and remand for further proceedings.

On December 1, 2012, at about 9:55 p.m., Philadelphia Police Officer Amina Oliver ("Officer Oliver") observed Lane's vehicle blocking the eastbound lane on Loudon Street.  Trial Court Opinion, 7/1/15, at 2.  Upon Officer Oliver's approach, Lane exited his vehicle, began undressing, and shouted "Stacey Lane (his name) got love for Logan (the neighborhood of the incident)."  ***Id.*** (quoting N.T., 8/21/13, at 14).  As Lane continued to scream at passing cars, Officer Oliver observed that Lane had dilated pupils and his body and car smelled strongly of PCP.  Trial Court Opinion, 7/1/15, at 2.  Officer Oliver called for a police wagon to transport Lane to the

hospital. *Id.* At about 11:22 p.m., the chemical testing officer unsuccessfully tried to rouse Lane, who was unconscious in his hospital bed. *Id.* at 2-3. That testing officer observed that hospital personnel had administered Ativan and Haldol to Lane. *Id.* at 3. After reading the unconscious Lane his implied consent warnings, the officer ordered the nurse to draw blood from Lane. *Id.* Upon testing, Lane's blood tested positive for the presence of morphine, codeine, ethyl alcohol, and marijuana metabolite. *Id.* at 3-4.

The Philadelphia Municipal Court convicted Lane of the above-described charges on March 13, 2013. Lane filed a timely appeal seeking a trial *de novo* before the common pleas court. After a bench trial, the trial court convicted Lane of the above charges. Lane filed a post-verdict Motion for extraordinary relief, claiming newly discovered evidence, and requesting a new trial based upon the United States Supreme Court's decision in *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 686 (2013). The trial court granted Lane's Motion in part, reopening the trial to allow Lane to present additional evidence, but denying relief pursuant to *McNeely*. Following Lane's presentation of the new evidence, the trial court again convicted Lane of the above-described charges, and sentenced him to a jail term of seventy-two hours to six months, followed by six months of probation.

Lane filed a post-sentence Motion, which the trial court denied. Thereafter, Lane filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Lane presents the following claim for our review:

> Where the controlling case law changed after [Lane] waived his right to litigate a [M]otion to suppress the blood drawn in his prosecution for driving under the influence, but while his case was still before the trial court, was it not error for the trial court to deny his post-verdict [M]otion for extraordinary relief and a new trial so that he may litigate the [M]otion to suppress?

Brief for Appellant at 3.

Lane contends that in *McNeely*, the United States Supreme Court opined that a police-ordered blood draw is a "search," and "warrantless searches are presumed unreasonable unless they meet some well-founded exception to the warrant requirement." *Id.* at 8. Lane contends that the procedural rules governing municipal court trials and appeals precluded him from seeking relief immediately prior to the trial *de novo*. *Id.* at 9. According to Lane, he presented his claim, based upon *McNeely*, at the first opportunity—*i.e.*, in his post-verdict Motion for extraordinary relief and a new trial. *Id.*

We first address whether Lane has preserved his claim for appellate review. An appellant convicted in Philadelphia's Municipal Court has two options for seeking relief from a municipal court's verdict: (1) file an appeal for a trial *de novo*, or (2) petition for *certiorari*. Pa.R.Crim.P. 1006(1)(a).

- 3 -

> "A trial *de novo* gives the defendant a new trial without reference to the Municipal Court record; a petition for writ of *certiorari* asks the Common Pleas Court to review the record made in the Municipal Court." ***Commonwealth v. Menezes***, 2005 PA Super 90, 871 A.2d 204, 207 n.2 (Pa. Super. 2005). These options are mutually exclusive. Pa.R.Crim.P. 1008(A) ("The notice [of appeal from a Municipal Court ruling] shall state which method of review is being sought in the court of common pleas by indicating whether it is a notice of appeal or notice of a petition for a writ of *certiorari*.").

***Commonwealth v. Beaufort***, 112 A.3d 1267, 1269 (Pa. Super. 2015). "A trial *de novo* is generally limited to a relitigation of guilt or innocence only." ***Commonwealth v. Douglass***, 701 A.2d 1376, 1379 (Pa. Super. 1997). Accordingly, "a defendant [can]not relitigate at the trial *de novo* issues raised, or which could have been raised, at the Municipal Court suppression hearing." ***Commonwealth v. Dobson***, 405 A.2d 910, 914 (Pa. 1979).

The bar on relitigation of pre-trial suppression motions at trials *de novo* is codified in Philadelphia Court Criminal Division Rule 630(G):

> Unless specially allowed in accordance with subsection (d) of this Rule,[1] the trial *de novo* shall not include relitigation of the application to suppress. A defendant may seek a review of the record of the suppression hearing heard on the day set for Municipal Court trial as part of a Writ of Certiorari.

Phila.Co.Crim.Div. Rule 630(G) (footnote added). However, Philadelphia Court Criminal Division Rule 630(H) provides a mechanism for review of evidentiary issues *after* the trial *de novo*:

---

[1] Subsection (D) provides that pre-trial suppression motions "shall be heard on the same day set for trial and immediately prior to trial. The Judge hearing the application to suppress will hear the same as a Common Pleas Court Judge." Phila.Co.Crim.Div. Rule 630(D).

> In the event a defendant is convicted after appeal and trial *de novo* in the Common Pleas Court, a defendant may raise in an application for a Motion for a New Trial the admissibility of the evidence introduced at trial. If the evidence so challenged was the subject of an application to suppress heard prior to Municipal Court trial, the Court shall review the transcript and decision of the suppression hearing as part of the Common Pleas Court record.

Phila.Co.Crim.Div. Rule 630(H). Thus, Rule 630 did not prohibit Lane from challenging the admissibility of the blood test results by means of his Motion for extraordinary relief. Because Lane properly raised his claim in his Motion for extraordinary relief, we conclude that his claim is preserved for our review. ***See id.***

The administration of a blood test is a search under the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution. ***Birchfield v. North Dakota***, 2016 U.S. LEXIS 4058, *28 (U.S. June 23, 2016); ***Commonwealth v. Kohl***, 615 A.2d 308, 312, 315 (Pa. 1992).

> A search conducted without a warrant is constitutionally impermissible unless an established exception applies. A consensual search is one such exception, and the central inquiries in consensual search cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent, and the voluntariness of the consent. . . . Where the underlying encounter is lawful, the voluntariness of the consent becomes the exclusive focus.

***Commonwealth v. Caban***, 60 A.3d 120, 127 (Pa. Super. 2012).

In ***McNeely***, the United States Supreme Court determined "whether the natural dissipation of alcohol in the bloodstream establishes a *per se*

- 5 -

exigency that suffices[,] on its own[,] to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations." *McNeely*, 133 S. Ct. at 1561. The *McNeely* Court ruled that "[i]n those driving situations where police officers can reasonably obtain a warrant before a blood sample can be drawn[,] without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *McNeely*, 133 S. Ct. at 1561.

More recently, the United States Supreme Court confirmed that the Fourth Amendment prohibits "unreasonable searches," and "our cases establish that the taking of a blood sample … is a search." *Birchfield*, 2016 U.S. LEXIS 4058, *28. In *Birchfield*, the Supreme Court was asked to determine the constitutionality of implied consent laws, which make it a crime for a motorist to refuse to be tested after being lawfully arrested for driving while impaired. *Id.* at *10. In addressing this issue, the Supreme Court confirmed the continued applicability of its holding in *McNeely*, in determining whether exigent circumstances exist:

> "[T]he text of the Fourth Amendment does not specify when a search warrant must be obtained." *Kentucky* v. *King*, 563 U.S. 452, 459, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011); *see also California* v. *Acevedo*, 500 U. S. 565, 581, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991) (Scalia, J., concurring in judgment) ("What [the text] explicitly states regarding warrants is by way of limitation upon their issuance rather than requirement of their use"). But "this Court has inferred that a warrant must [usually] be secured." *King*, 563 U.S., at 459, 131 S. Ct. 1849, 179 L. Ed. 2d 865. This usual requirement, however, is subject to a number of exceptions. *Ibid.*

We have previously had occasion to examine whether one such exception—for "exigent circumstances"—applies in drunk-driving investigations. The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant. *Michigan* **v.** *Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). It permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence. *King*, *supra*, at 460, 131 S. Ct. 1849, 179 L. Ed. 2d 865.

*       *       *

More recently, … we have held that the natural dissipation of alcohol from the bloodstream does not *always* constitute an exigency justifying the warrantless taking of a blood sample. That was the holding of [*McNeely*], where the State of Missouri was seeking a *per se* rule that "whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because BAC evidence is inherently evanescent." [*McNeely*, 569 U.S.] at ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696, 707 (opinion of the Court). We disagreed, emphasizing that *Schmerber* [*v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966),] had adopted a case-specific analysis depending on "all of the facts and circumstances of the particular case." [*Id.*] at ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696, 707. We refused to "depart from careful case-by-case assessment of exigency and adopt the categorical rule proposed by the State." *Id.*, at ___ , 133 S. Ct. 1552, 185 L. Ed. 2d 696, 707.

*Birchfield*, 2016 U.S. LEXIS 4058, *28-30 (emphasis in original). Thus, the

holding in *McNeely* continues to apply in determining whether exigent

circumstances warrant the taking of a blood sample without a warrant.[2] *See id.*

In *Commonwealth v. Myers*, 118 A.3d 1122 (Pa. Super. 2015), *appeal granted*, 131 A.3d 480 (Pa. 2016), a panel of this Court addressed the impact of *McNeely* on Pennsylvania's implied consent statutes. In *Myers*, a police officer, while on patrol at about 3:30 p.m., encountered the defendant's vehicle in the travel lane of West Penn Street. *Myers*, 118 A.3d at 1123. The chemical testing officer observed that the defendant engaged, then disengaged the brake lights repeatedly. *Id.* The officer pulled his vehicle behind the defendant's vehicle, with his lights and siren turned on. *Id.* The defendant exited his vehicle, and began staggering toward the officer's vehicle. *Id.* Upon smelling an odor of alcohol, and observing a brandy bottle on the front seat of the defendant's vehicle, the officer placed the defendant under arrest. *Id.* at 1124. The officer called an ambulance, which transported the defendant to the hospital. *Id.* The chemical testing officer, who had responded to the hospital, observed that the defendant was unconscious and unresponsive. *Id.* The officer also discovered that hospital staff had administered Haldol to the defendant. *Id.* Because the defendant was non-responsive to questions, the chemical testing officer read the

---

[2] The *Birchfield* Court additionally adopted a categorical approach, rather than a case-by-case approach, in determining whether a blood sample may be taken incident to an arrest. *Birchfield*, 2016 U.S. Lexis 4058, at \*44. Ultimately, the Supreme Court concluded that a blood test may not be administered as a search incident to a lawful arrest for drunk driving. *Id.* at \*60.

"standard informed consent warnings" to the unconscious defendant. *Id.* The defendant never signed consent warnings, and no warrant for the defendant's blood was secured; however, the police officer obtained a warrantless blood sample from the defendant. *Id.*

The defendant sought suppression in the Municipal Court based on, *inter alia*, the warrantless draw of his blood. *Id.* The Municipal Court granted the suppression motion with respect to the blood because it concluded the defendant was unconscious and could not consent, and "it was not unreasonable" for the Commonwealth to obtain a warrant under the circumstances. *Id.* at 1124-25. The Philadelphia Court of Common Pleas affirmed the ruling, and the Commonwealth appealed to this Court. *Id.* at 1125.

On appeal, the Commonwealth claimed that the trial court's reliance on *McNeely* was misplaced, because the *McNeely* Court did not consider whether an implied consent law is an exception to the warrant requirement. *Id.* at 1127. The Commonwealth argued that, under 75 Pa.C.S.A. § 1547(a)(1), "where an officer has probable cause to arrest a defendant for DUI, and an unresponsive defendant has not affirmatively refused consent, the officer may conduct a warrantless blood draw." *Myers*, 118 A.3d at 1128. This Court rejected the Commonwealth's contention:

> Pennsylvania's implied consent statute provides a driver under arrest with the statutory right of refusal to blood testing, *see* 75 Pa.C.S.[A.] § 1547(b)(1) ("If any person placed under arrest for a violation of section 3802 is requested to submit to chemical

testing and refuses to do so, the testing shall not be conducted ....").  As discussed, Section 1547 provides for chemical testing when consent is not withdrawn pursuant to subsection (b)(1), and precludes a blood draw when consent is withdrawn and imposes penalties.  Here, [the defendant] was arrested for DUI and transported to the hospital, but was not given the applicable warnings until a later time, at which point he could not claim the statutory protection of Section 1547(b)(1)….

\* \* \*

We recognize this case differs from **McNeely** where the blood draw was nonconsensual.  Nevertheless, because police did not act pursuant to the implied consent law until 4:45 p.m., after Myers had been rendered unconscious by an intervening cause that occurred subsequent to his DUI arrest and transport to the hospital, we conclude **McNeely** controls here.  Further, we agree with the trial court that the Commonwealth failed to justify the failure to obtain a warrant prior to the 5:01 p.m. blood draw….

**Myers**, 118 A.3d at 1130.

The facts in the instant case are substantially similar to those presented in **Myers**.  Here, Officer Oliver observed Lane exit his vehicle, which was stopped in the travel lane.  N.T., 8/21/13, at 11.  Officer Oliver observed Lane undress and shout at passing vehicles.  **Id.** at 14.  She further observed that Lane's pupils were dilated, and his body and car smelled strongly of PCP.  **Id.** at 15.  Similar to **Myers**, Lane was transported to the hospital, where he was administered Ativan and Haldol.  **Id.** at 18, 29.  Similar to **Myers**, the chemical testing officer in the instant case read the implied consent warning to an unconscious Lane, thereby depriving him of his statutory right to withhold his consent for the blood draw.  **Id.** at 32-

33.    Finally, similar to *Myers*, the chemical testing officer ordered the withdrawal of blood from the unconscious Lane.  *Id.* at 30.

Upon review, we conclude that *Myers* and *McNeely* are applicable, and require the suppression of the blood sample seized from Lane.  For this reason, we reverse the judgment of sentence, and remand for a new trial, in accordance with *McNeely* and *Myers*.

Judgment of sentence reversed; case remanded for a new trial; Superior Court jurisdiction relinquished.

Judge Bowes and Judge Mundy concur in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2016

- 11 -